No. 13362

IN THE SUPREME COURT OF THE STATE OF MONTANA

PAUL BIEGALKE,

Plaintiff and Appellant,
Counter-Claim-Defendant,

-vs-

MADELINE BIEGALKE,

Defendant and Counter-Claim
Plaintiff.

Appeal from: District Court of the Sixteenth Judicial District,
Honorable A. B. Martin, Judge presiding.

Counsel of Record:

For Appellant:

Sandall, Cavan and Edwards, Billings, Montana
John Cavan argued, Billings, Montana

For Respondent:

Cate, Lynaugh, Fitzgerald and Huss, Billings,
Montana
Jerome J. Cate argued, Billings, Montana

Submitted: January 25, 1977

Decided: MAY 2 3 1977

MAY 2 3 1977

Filed:

_Thomas J. Kearney_
Clerk

Mr. Justice Gene B. Daly delivered the opinion of the Court.

This is an appeal from the property division contained in a decree of divorce granted to both parties in the district court, Custer County.

Plaintiff is now 55 years of age. As a young man before his marriage and upon the death of his father, he took over and operated the family farm near Havre, Montana. He has spent his entire adult life up to this time operating farms and ranches.

Defendant is approximately the same age as plaintiff and has the same life style background.

The parties were married in 1948. They resided on the Havre farm until 1951, when they purchased the present farm-ranch which is located 14 miles west of Miles City, Montana, consisting of approximately 6,000 acres. The purchase price in 1951 was $120,000.00. Since 1951, several additional tracts have been added to the family holdings. At the original purchase, $57,000.00 was paid into the farm-ranch by plaintiff out of funds received from the sale of the Havre holdings. When purchased the Miles City farm-ranch was run down, with some old buildings, no water, plumbing or electricity.

After the purchase at Miles City the defendant contributed all the finances she possessed for living expenses and a down payment on farm machinery, for a total of approximately $1,800.00 to $1,900.00.

During the next 8 years, 6 children were born. In addition to performing farm chores, defendant raised the children under extremely adverse conditions. There was never more than the bare

necessities of life available to the family on the farm or elsewhere. Defendant drove the children to school for a number of years and then the family obtained a 3 or 4 plex in Miles City which defendant and children occupied during the school years. Defendant testified she sold books door to door to pay tuition for the children's schooling and to supplement the food budget, etc. The standard of living seemed unnecessarily harsh in view of an unoccupied, almost complete brick home of 3,000 square feet at the farm, standing next to the family housetrailer for some 19 years. This demonstrates that defendant gave all she was capable of giving in labor, self-denial and money over a period of years, during which farm buildings were erected and the farm improved into one of the finest farm-ranches in that area of Montana, together with a financial improvement of around a million dollars over the original purchase price.

The divorce action was tried September 18, 1975. The court entered its findings of facts and conclusions of law and decree January 20, 1976. The parties were each granted an absolute decree of divorce one from the other. Plaintiff was awarded custody of one minor girl and defendant awarded custody of the remaining minor boy, Paul Eric, a retarded child.

The court found 1) the husband and wife had during the course of their marriage increased the net value of their assets approximately $1,000,000.00 over and above money or property contributed at the time of the marriage; 2) that the accumulation of wealth was the result of hard work and sacrifice contributed by the parties and the immediate members of their family; and 3) that the wife's contribution as a ranch wife, homemaker

and mother is equal in value to the husband's contribution as a ranch laborer and manager.

The property of the parties was divided in this manner:

(1) Plaintiff received the ranch-farm and all personal property, etc. in connection with its operation.

(2) Defendant received the property in Miles City.

(3) Defendant to be paid her interest in marital assets of $325,000.00, in this way:

> a. Miles City property $20,000.00 (Mortgage $9,000.00).
>
> b. $5,000.00 immediately.
>
> c. $50,000.00 within 60 days following entry of decree (this date shall be the anniversary date of payment of annual subsequent installments).
>
> d. One year from date of decree $50,000.00.
>
> e. Remaining balance of $200,000.00 to be paid in annual installments of $20,000.00, no interest if payment paid when due.
>
> f. After payment of $75,000.00 by plaintiff; upon showing of losses beyond his control he can apply to the court for equitable adjustment of payment of the balance.

The division was based on the premise that the ranch be kept intact and operated. If the ranch is sold by plaintiff or heirs before payment schedule is complete, defendant's equity will be $500,000.00 less $27,083.00 ($325,000.00 divided by 12) for each full year of operation as a ranch unit. If the ranch is sold on a contract the formula is changed, but defendant's interest remains the same figure.

Plaintiff appeals from the portion of the findings of fact and conclusions of law and final decree which divides the assets in the manner set forth, on the ground the court abused its discretion and that portion of the findings, conclusions and decree is not supported by the evidence or the law.

Plaintiff in his brief on appeal discussed the major cases since 1960 to date which had to do with formulation of the law on division of property accumulated during a marriage and has extracted the following guidelines from those cases:

1. The district court does have the jurisdiction to make an equitable adjustment of property rights between the husband and wife.

2. No particular pleading is necessary, nor is any recognized cause of action necessary to give the court such jurisdiction. The only requirement is that the language in the pleading puts the parties on notice that the court is being asked to make such an adjustment.

3. The jurisdiction of the court to make such adjustment is founded on its inherent power in equity cases to grant complete relief.

4. The title to or possession of property (except as to property not acquired by the joint efforts of the parties) cannot defeat the power of the court to make such an adjustment.

5. There is no presumption of gift as between husband and wife in property matters.

6. The court's exercise of its discretion in adjusting property rights between husband and wife must be reasonable under the circumstances of the case and there is no fixed formula or ratio to be applied in each instance.

7. In exercising its discretion, the court's adjustment of property rights must be reasonable and equitably related to the "contribution" of the parties to the acquisition of such assets.

8. In determining "contribution", the court may consider cash contributions; work or effort directly furthering the acquisition or increase in value of marital assets; the performance of the ordinary duties of the wife or husband and any extraordinary services performed by the wife or husband; any other matters in the individual case which the court reasonably feels constitutes a "contribution", direct or indirect, to such acquisition.

9. The court should consider the size or value of the estate to be adjusted and the needs of the respective parties for support and their respective abilities to support themselves.

10. The court should consider the nature of the marital assets; whether or not they are readily divisible; whether or not they, or any part thereof, are necessary to one party or the other to carry out the terms of the court's decree, such as a payment of money in lieu of property.

We agree that these guidelines have been established in the line of cases on this subject during the past 15 years. Although the instant case pre-dates the effective date of the Uniform Marriage and Divorce Act, the provisions of that act for consideration of property division are very similar to the case law. Section 48-321, R.C.M. 1947.

Plaintiff suggests the district court's finding of contribution by the defendant is not supported by the evidence. Her cash contributions are in the record. The statement that she took

no active part in the farming as such, is not correct. This kind of selective treatment of the record disregards the testimony of defendant, which is credible and was not refuted, about doing a man's work and wearing out her wedding band chopping wood, turning bales in the field, chasing cattle on foot and most important the assistance rendered while plaintiff was periodically disabled for periods of several months at a time with a chronic disease. The reason she could not spend more time in the fields seems to be due in part to the fact plaintiff blessed her with something like 6 children in 8 years, the care of them somewhat limiting the time a woman could spend out-of-doors.

The allegation the family moved to Miles City in 1965 and defendant has only occasionally been to the ranch since is not a fair statement of the record. Plaintiff testified he moved the family to town and then sold the trailer house they occupied and there was no other home for them. Defendant testified she continued to cook--do all things asked of her at the farm until she got her divorce papers. The testimony has not been rebutted.

The record does not support the allegation by plaintiff that the trial judge abused his discretion when he found the contribution of the parties to the accumulation of marital assets to be equal. Additionally the law cited and approved by plaintiff supports the trial court.

The remaining issue presented by plaintiff concerns the appraisal of the real and personal property of the parties by Don Mullen, of Mullen Realty, Miles City, Montana.

It was agreed by the parties that Mullen be appointed by the court. His appraisal was accepted as Exhibit "N", by the court without objection. His qualifications were stipulated.

Plaintiff advised the court that he only wished to examine the witness because of a disagreement with a portion of the contents of the exhibit.

Defendant contends the appraiser missed 640 acres of property, 125 cows, 90 yearlings, 7 bulls, 35 steers and 15 heifers owned by the parties. He did not appraise mineral rights, cash on hand, or a $14,000.00 Mercedes automobile owned by plaintiff.

Plaintiff questions and objects to values placed on the land by the appraiser, i.e. admits in court he was high on the grazing land. Plaintiff questions the $250.00 per acre on crop land and questions the method of appraisal.

We could continue on with this argument but the fact remains that both parties accepted the appraiser and his report and did not object to his qualifications or Exhibit "N", the appraisal. At this point the trier of the facts has the discretion to give whatever weight he sees fit to the testimony of the expert from 0 to 100%. Nelson v. C &C Plywood Corp. 154 Mont. 414, 422, 465 P.2d 314. The trial judge has done this.

Considering all of the evidence at the trial, the court found (1) a one million dollar increase in value of the marital assets over and above contribution at the time of the marriage, (2) defendant's contribution was equal to plaintiff's; (3) defendant received approximately 26% of the value but this also includes the care and education of Eric, a retarded boy, who in all probability will not be emancipated at the legal age of majority but will remain with his mother. The only obligation plaintiff his is to assume _major_ medical, dental and education expense, undefined.

Finding no abuse of the court's discretion and no errors in law, the judgment of the trial court is affirmed.

_____
Justice.

- 8 -

We Concur:

_Dave C Hatfield_
Chief Justice

_Frank I. Haswell_

_John Conway Harrison_

_Daniel J. Shea_
Justices.