No. 13364

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

WILLIAM R. MORSE,

Plaintiff and Appellant,

-vs-

BETTY J. MORSE,

Defendant and Respondent.

---

Appeal from: District Court of the Thirteenth Judicial
District,
Honorable M. James Sorte, Judge presiding.

Counsel of Record:

For Appellant:

Anderson, Symmes, Forbes, Peete and Brown, Billings,
Montana
Weymouth D. Symmes argued, Billings, Montana

For Respondent:

Hon. Michael Greely, Attorney General, Helena,
Montana
Allen B. Chronister, Assistant Attorney General,
appeared, Helena, Montana
Berger, Anderson, Sinclair and Murphy, Billings,
Montana
Arnold A. Berger argued, Billings, Montana

---

Submitted: January 25, 1977

Decided: NOV 16 1977

Filed: NOV 16 1977

_Thomas J. Kearney_
Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court:

The husband appeals from a judgment of the District Court, Stillwater County, awarding certain property to the wife in a property distribution decree following dissolution of marriage.

The husband raises several issues relating to the Uniform Marriage and Divorce Act and further claims the court failed to consider several factors in making its award of the marital property. One of the issues under the Uniform Marriage and Divorce Act is his claim that the court did not consider the wife's inheritance as a marital asset. Because the District Court was not specific in its disposition of the inheritance, we are compelled to reverse and remand for a hearing on the disposition of the inheritance. As to his remaining contentions, we find no error.

First, we will discuss the various other issues raised by the husband, and discuss last the issue of the wife's $200,000 inheritance.

Both the husband and wife were granted a divorce by the court on October 23, 1974. A trial on property disposition was held December 9 and 10, 1975. The court issued findings of fact, conclusions of law and order apportioning the marital property on January 19, 1976.

The husband contends the correct law under which the court divided the property was that which existed at the time the trial was held on that matter, and hence prior to the effective date of the Uniform Marriage and Divorce Act in Montana, January 1, 1976. However, section 48-341, R.C.M.1947, of that Act, states:

- 2 -

" * * *

"(2) This act applies to all pending actions
and proceedings commenced prior to its effective
date with respect to issues on which a judgment
has not been entered * * *

"* * *

"(4) In any action or proceeding in which an
appeal was pending or a new trial was ordered
prior to the effective da te of this act, the law
in effect at the time of the order sustaining
the appeal or the new trial governs the appeal,
the new trial, and any subsequent trial or appeal."

Here, the trial court did not enter judgment on the property

division until January 19, 1976, eighteen days after the effective

date of the Uniform Marriage and Divorce Act. Section 48-341(4)

of that Act specifies the exclusive circumstances under which

an action would fall under pre-existing law--cases in which a

judgment has already been entered or a new trial ordered. Sub-

section (4) plainly does not apply to this case as a judgment

had not been entered when the Uniform Marriage and Divorce Act

went into effect. We might add, however, that in the area of

property division, the Uniform Marriage and Divorce Act provisions

are similar to case law predating that Act. Biegalke v. Biegalke,

_____Mont._____, 564 P.2d 987, 34 St.Rep. 401, 405 (1977).

Therefore the husband lost no substantial rights by coming under

the Uniform Marriage and Divorce Act.

The basis for dividing property upon dissolution of marriage

is set out in section 48-321, R.C.M. 1947. It provides in

relevant part that the court:

"* * * without regard to marital misconduct, shall
* * * finally equitably apportion between the
parties the property and assets belonging to either
or both however and whenever acquired, and whether
the title thereto is in the name of the husband or
wife or both. * * *" (Emphasis supplied.)

- 3 -

The statute also sets out factors which the court must consider in the apportionment of the property, including:

> "* * * amount and sources of income * * * needs of each of the parties [and] whether the apportionment is in lieu of or in addition to maintenance * * *."

Concerning property acquired by either spouse before marriage or by gift, bequest, devise or descent, the statute provides the court shall:

> "* * * consider those contributions of the other spouse to the marriage * * * the extent to which such contributions have facilitated the maintenance of this property and whether or not the property disposition serves as an alternative to maintenance arrangements."

The husband asks this Court to disregard the specific language of the statute prohibiting consideration of marital misconduct in distributing marital property. The statute expressly forbids a consideration of marital misconduct in apportioning the marital estate. Since the intent is clear we take the statute as we find it. In the Matter of West Great Falls Flood Control and Drainage District, 159 Mont. 277, 287, 496 P.2d 1143 (1972). It is equally clear that the husband would fare no better under the law pre-existing the Uniform Marriage and Divorce Act. Before that Act, "fault" was considered only in the context of a party's right to alimony and could not be the basis for depriving either party of property interests upon divorce. Johnson v. Johnson, 137 Mont. 11, 17, 349 P.2d 310 (1960).

The husband also contends that the wife quitclaimed certain property to him before the dissolution of the marriage and accordingly, the court should not consider that property as part of the marital estate. He claims it was the intent of the wife to deliver the property to him and this was manifested by the

- 4 -

execution, delivery, and filing of the deeds. However, section 48-321 provides that a district court may equitably divide property "however and whenever acquired" and therefore the question of title is not controlling. This was also the law before the enactment of the Uniform Marriage and Divorce Act. LaPlant v. LaPlant, _____Mont._____, 551 P.2d 1014, 33 St.Rep. 580 (1976); Downs v. Downs, _____Mont._____, 551 P.2d 1025, 33 St.Rep. 576 (1976); Cook v. Cook, 159 Mont. 98, 102,103, 495 P.2d 591 (1972).

The husband contends the prospective assets and liabilities of the parties should be considered in a property division. While it is true that section 48-321 requires the court, among other things, to consider "the opportunity of each for future acquisition of capital assets and income", here there was no sufficient foundation established for the reasonable likelihood of acquiring future assets. As to future debts or liabilities of the parties, such evidence is normally too speculative, and in this case there was no reliable evidence by which the court could determine future liabilities. For the same reason, we cannot consider the possibility the wife will receive an inheritance from her mother sometime in the future.

Because of the ambiguity of the District Court's findings on the wife's inheritance of $200,000 before the dissolution of the marriage, we are compelled to remand the cause for a hearing and specific findings. It is clear under section 48-321, "property and assets belonging to either or both however and whenever acquired",that the $200,000 inheritance was properly an asset of the marital estate at the time of dissolution. The husband contends since the wife was awarded the entire $200,000 inheritance, that he should have received a corresponding benefit from the remainder of the marital property.

- 5 -

In his findings the trial judge noted that the wife did have an inheritance of $200,000. However, the judge failed to dispose of that inheritance in any way which would clearly show his intent. The order of distribution listed certain property awarded to the wife, and the remainder to the husband. Since the wife was not specifically awarded the $200,000, it could be argued the husband was to receive the $200,000 inheritance of the wife. But there is no evidence the husband asked for all or any portion of the wife's inheritance. Neither is there any indication from the evidence, findings and conclusions that the court intended to award all or any portion of the wife's inheritance to the husband. Moreover, on appeal to this Court both parties treat the inheritance as having been awarded to the wife.

The confusion indicated by the record and the position of the parties can only be resolved by a rehearing on the issue of the inheritance. We stress here that, as in all decrees of property distribution, there is no definite formula that must be followed and each case must be treated on an individual basis. Biegalke v. Biegalke, supra.

The wife contends the decree should be modified so that property awarded to her can be taken from the husband's indirect control. This is a matter for the District Court to consider upon remand of this case, and it need not be discussed here. The wife also contends the judgment should be set aside because the record did not disclose the true net worth of the husband. She did not cross-appeal on this issue, but raised it for the first time in her brief on appeal. Accordingly, she is precluded from raising this issue on appeal. Johnstone v. Svejkovsky, ____Mont.____, 554 P.2d 1329, 33 St.Rep. 954 (1976); Spencer v. Robertson, 151 Mont. 507,

- 6 -

511, 455 P.2d 48 (1968).

We vacate the judgment of the district court and remand it for further proceedings consistent with this Opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

Justices.

Mr. Justice John Conway Harrison concurring in part and dissenting in part:

This Court in Biegalke v. Biegalke, ____Mont.____, 564 P.2d 987, 34 St.Rep. 401 (1977), established in Montana that in cases, such as the instant one, the provisions of Chapter 3, Title 48, sections 48-301 through 48-341, R.C.M. 1947, Montana's Uniform Marriage and Divorce Act, apply.

However, in apportioning the property of the parties here, under the provisions of section 48-321, I disagree with the majority.

Here, under the facts until 1964, when the wife moved to England, away from the marital domicile, such a division would, in my opinion, have been just, for up to that time both equally contributed to the acquisition of the property. As I view the evidence, it was the defendant wife who wanted the English experience, and it was the plaintiff husband who reluctantly went along with her demands. It was plaintiff husband who had to purchase the home in England and maintain his family there. From 1964 to 1972, with the exception of quarterly visits, and because of the wife's insistence on living in England, plaintiff's children grew up without his close supervision and guidance and he was denied the joy and satisfaction of seeing their daily development for some eight years. Under these facts one would assume the children would be in support of their mother, but here, because of her conduct, she has lost the support of all five children. They have returned from England to the family home in Absarokee and support their father's position in these proceedings. He has become both father and mother to them and it is to him they have looked to for fiscal and emotional support these last six years. Even under the findings of the trial court, it was

found that after moving to England the wife contributed little or nothing to plaintiff father's earning capacity.

During the marriage the parties accumulated the following property:

1. Family dwelling in Absarokee, with garage         $29,660
        (average appraised value)
2. Law office building                                 3,167
3. Morse apartments                                   27,400
4. Rumaino acreage                                    47,800
5. Airplane and hanger                                16,750
6. Contract proceeds (total)                          22,048
7. Morse-Edmonds-Henrickson contract                  15,361
8. Pickup and vehicles (agreed value)                  4,500
9. Home furniture (plaintiff's estimate)               5,000
10. Notes and mortgages receivable                    23,733
11. Value due on lumber                                3,000
12. Accounts receivable (excluding those with
        doubtful collection possibilities)             5,992
13. Insurance (cash surrender value)                  11,391
14. Savings Account - Livingston, Montana             12,199
15.  Checking Account                                    880
16. Bank account - Red Lodge                          10,967
17. Morse Apartments Account                           4,305
18. Bonds (including $2,500 belonging to
        wife at time of marriage)                      8,000
19. Library and equipment - law office                 2,500
20. Morse Apartments - furniture, fixtures               200
21.  Plaintiff's apartment furniture                     250
22.  Wife's inheritance from father, L.B. Kratz      200,000

The liabilities of the parties consist primarily of outstanding mortgages:

1.  Federal Land Bank Mortgage                       $25,207
2.  U.S. Bank, Red Lodge                              37,195
3.  Estimated back tax liability - IRS (1971-1975)   54,000.

In June 1972, defendant returned to Montana and took up residence with her parents. The divorce proceedings commenced shortly thereafter. Within two years, but prior to the divorce, her father died leaving her approximately $200,000 and in addition she received $9,740 as executrix of the estate. She occupies the family home and has full use of two family automobiles. While speculative in amount, she will inherit a substantial estate from her mother who is 82 years old.

In spite of the above facts, the trial court made this distribution of property:

"A. TO THE DEFENDANT:

    (1) Family dwelling .... together with the attached shed or garage ...

    (2) All furniture and personal property located in the family home other than that claimed by the third party intervenor, and plaintiff's business records.

    (3) The Morse Apartments ...

    (4) The furniture and fixtures in the Morse Apartments.

    (5) All of the money's payable and all right, title and interest of the plaintiff in and to the property described as the Morse-Edmonds-Hendrickson Contract, the sum being $15,360.83, or, in the alternative, a cash payment of $15,360.83.

    (6) One half of the United States Savings Bonds (if and when found).

"B. TO THE PLAINTIFF:

    (1) All of the property of the parties not awarded to defendant as evidenced from the exhibits and the testimony and brought out during the course of the trial.

    (2) The Plaintiff shall pay all outstanding indebtedness on the mortgages that secure a loan on any property that was awarded to the defendant herein."

Considering the facts of the instant case, such a distribution of property is, in my opinion, an inequitable distribution to the wife. No mention is made by the trial court of the $200,000 plus inheritance in the court's disposition formula contained in its conclusion of law. Totaling the values of the properties taken by the respective parties in such case, would yield this result:

TO THE HUSBAND

$173,482 (total value)
less    62,400 (Outstanding mortgage liabilities)
     111,082
less    24,000 (conservative estimate of predivorce tax liability)
   $ 87,082.

- 10 -

The husband received no house or living arrangements other than the ability to rent an apartment owned by the wife by virtue of the decree. He is, as is apparent, responsible for all of the liabilities of the marriage, a factor to be considered under the express language of section 48-321.

TO THE WIFE

```
        $81,621
plus    200,000  (inheritance funds)
plus      9,700  (executrix  fee)
        $291,321
```

In addition, the wife received the family home, which she now rents to others, despite the court having found as a fact that she is entitled to the use and occupancy of the Kratz home.

Section 48-321 is a statute of broad applicability. It speaks of consideration of "all property however and whenever acquired" and expressly refers to inheritances. Other factors to be balanced, which would find applicability in this case are: amount and sources of income, needs of the parties, and opportunities for future acquisitions of capital.

Other courts have held that, due to a short term marriage or other like circumstances, a spouse seeking apportionment of a large sum either brought into the marriage or acquired early in the marriage by the other spouse, whether by inheritance or otherwise, does not have the same "interest" in the sum as in cases where the marriage is of long duration. Here, the marriage lasted approximately 29 years. To deny the husband a share of the wife's inheritance would stand on the same footing as denying the wife a share of a large sum in windfall profits from the husband's business or investments acquired just prior to the divorce.

To consider inheritances per se as being beyond the language or intent of section 48-321, would be, in a sense, to cause Montana to become a de facto community property state in this regard. In my opinion, this is not the intent of section 48-321.

Here, while the husband has a better future earning potential than the wife for obvious reasons a fact which must be weighed in the balance, the wife does have a strong potential for future acquisition of capital. Both are factors which relate to the future needs of the parties.

The trial judge in his findings of fact recognized the wife stands to receive large sums from her mother upon her death. The mother is presently 82 and in very poor health. The facts indicate a strong likelihood of such inheritance, due to the fact Mr. and Mrs. Kratz maintained a joint will.

I find the holding in Smyth v. Smyth, (Okla.1947), 179 P.2d 921, 923, persuasive here. There the court said:

> "'Next to the fortune of which he is already possessed, consideration should be given to * * * future prospects and probable acquisition of wealth from any source whatever.* * *'"

See also: Smith v. Smith, (Okla.1957), 311 P.2d 229; Kessinger v. Kessinger, 360 Mich. 528, 104 N.W.2d 192 (1960).

In addition, I find the trial court's decision to saddle plaintiff husband with the obligation of all the pre-existing tax liabilities to be inequitable. Both owe the obligation, both have the ability to pay the obligation, and both should share in payment.

Considering the entire record here, I would reverse due to what, in my opinion, is an unconscionable property distribution.

_____
Justice.

- 12 -

I concur with Mr. Justice Harrison's dissent.

_____
Justice