MR. JUSTICE HARRISON,
concurring in part and dissenting in part:
This Court in Biegalke v. Biegalke, 172 Mont. 311, 564 P.2d 987, (1977), established in Montana that in cases, such as the instant one, the provisions of Chapter 3, Title 48, sections 48-301 through 48-341, R.C.M.1947, Montana’s Uniform Marriage and Divorce Act, apply.
*547 However, in apportioning the property of the parties here, under the provisions of section 38-321, 1 disagree with the majority.
Here, under the facts until 1964, when the wife moved to England, away from the marital domicile, such a division would, in my opinion, have been just, for up to that time both equally contributed to the acquisition of the property. As I view the evidence, it was the defendant wife who wanted the English experience, and it was the plaintiff husband who reluctantly went along with her demands. It was plaintiff husband who had to purchase the home in England and maintain his family there. From 1964 to 1972, with the exception of quarterly visits, and because of the wife’s insistence on living in England, plaintiff’s children grew up without his close supervision and guidance and he was denied the joy and satisfaction of seeing their daily development for some eight years. Under these facts one would assume the children would be in support of their mother, but here, because of her conduct, she has lost the support of all five children. They have returned from England to the family home in Absarokee and support their father’s postion in these proceedings. Fie has become both father and mother to them and it is to him they have looked to for fiscal and emotional support these last six years. Even under the findings of the trial court, it was found that after moving to England the wife contributed little or nothing to plaintiff father’s earning capacity.
Dúring the marriage the parties accumulated the following property:
1.Family dwelling in Absarokee, with garage (average appraised value)....................... $29,660
2. Law office building........................ 3,167
3. Morse Apartments........................ 27,400
4. Rumaino acreage......................... 47,800
5. Airplane and hangar....................... 16,750
6. Contract proceeds (total).................... 22,048
7. Morse-Edmonds-Henrickson contract.......... 15,361
8. Pickup and vehicles (agreed value)............ 4,500
9. Home furniture (plaintiff’s estimate)........... 5,000
*548 10. Notes and mortgages receivable.............. 23,733
11. Value due on lumber....................... 3,000
12. Accounts receivable (excluding those with doubtful collection possibilities)................... 5,992
13. Insurance (cash surrender value).............. 11,391
14. Savings Account — Livingston, Montana........ 12,199
15. Checking Account ........................ 800
16. Bank Account — Red Lodge -................. 10,967
17. Morse Apartments Account ................. 4,305
18. Bonds (including $2,500 belonging to wife at time of marriage)............................. 8,000
19. Library and equipment — law office........... 2,500
20. Morse Apartments — furniture, fixtures......... 200
21. Plaintiff’s apartment furniture............... 250
22. Wife’s inheritance from father, L. B. Kratz...... 200,000
The liabilities of the parties consist primarily of outstanding mortgages:
1. Federal Land Bank Mortgage................ $25,207
2. U. S. Bank, Red Lodge ..................... 37,195
3. Estimated back tax liability — IRS (1971-1975) . . . 54,000
In June 1972, defendant returned to Montana and took up residence with her parents. The divorce proceedings commenced shortly théreafter. Within two years, but prior to the divorce, her father died leaving her approximately $200,000 and in addition she received $9,740 as executrix of the estate. She occupies the family home and has full use of two family automobiles. While speculative in amount, she will inherit a substantial estate from her mother who is 82 years old.
In spite of the above facts, the trial court made this distribution of property:
“A. TO THE DEFENDANT:
(1) Family dwellings . . . together with the attached shed or garage .. .
(2) All furniture and personal property located in the family *549 home other than that claimed by the third party intervenor, and plaintiff’s business records.
(3) The Morse Apartments . . .
(4) The furniture and fixtures in the Morse Apartments.
(5) All of the money’s payable and all right, title and interest of the plaintiff in and to the property described as the MorseEdmonds-Hendrickson Contract, the sum being $15,360.83, or, in the alternative, a cash payment of $15,360.83.
(6) One half of the United States Savings Bonds (if and when found).
“B. TO THE PLAINTIFF:
(1) All of the property of the parties not awarded to defendant as evidenced from the exhibits and the testimony and brought out during the course of the trial.
(2) The Plaintiff shall pay all outstanding indebtedness on the mortgages that secure a loan on any property that was awarded to the defendant herein.”
Considering the facts of the instant case, such a distribution of property is, in my opinion, an inequitable distribution to the wife. No mention is made by the trial court of the $200,000 plus inheritance in the court’s disposition formula contained in its conclusion of law. Totaling the values of the properties taken by the respective parties in such case, would yield this result:
TO THE HUSBAND
$173,482 (total value)
less 62,400 (Outstanding mortgage liabilities)
111,082
less 24,000 (conservative estimate of pre-divorce tax liability) $ 87,082
The husband received no house or living arrangements other than the ability to rent an apartment owned by the wife by virtue of the decree. He is, as is apparent, responsible for all of the liabilities of the marriage, a factor to be considered under the express language of section 48-321.
*550 TO THE WIFE
$ 81,621
plus 200,000 (inheritance funds)
plus 9,700 (executrix fee)
$291,321
In addition, the wife received the family home, which she now rents to others, despite the court having found as a fact that she is entitled to the use and occupancy of the Kratz home.
Section 48-321 is a statute of broad applicability. It speaks of consideration of “all property however, and whenever acquired” and expressly refers to inheritances. Other factors to be balanced, which would find applicability in this case are: amount and sources of income, needs of the parties, and opportunities for future acquisitions of capital.
Other courts have held that, due to a short term marriage or other like circumstances, a spouse seeking apportionment of a large sum either brought into the marriage or acquired early in the marriage by the other spouse, whether by inheritance of otherwise, does not have the same “interest” in the sum as in cases where the marriage is of long duration. Here, the marriage lasted approximately 29 years. To deny the husband a share of the wife’s inheritance would stand on the same footing as denying the wife a share of a large sum in windfall profits from the husband’s business or investments acquired just prior to the divorce.
To consider inheritances per se as being beyond the language or intent of section 48-321, would be, in a sense, to cause Montana to become a de facto community property state in this regard. In my opinion, this is not the intent of section 48-321.
Here, while the husband has a better future earning potential than the wife for obvious reasons a fact which must be weighed in the balance, the wife does have a strong potential for future acquisition of capital. Both are factors which relate to the future needs of the parties.
The trial judge in his findings of fact recognized the wife stands to receive large sums from her mother upon her death. The mother *551 is presently 82 and in very poor health. The facts indicate a strong likelihood of such inheritance, due to the fact Mr. and Mrs. Kratz maintained a joint will.
I find the holding in Smyth v. Smyth (1947), 198 Okl. 478, 179 P.2d 920, 923, persuasive here. There the court said:
“ ‘Next to the fortune of which he is already possessed, consideration should be given to * * * future prospects, and probable acquisition of wealth from any source whatever. * * * ’ ”
See also: Smith v. Smith (Okl. 1957), 311 P.2d 229; Kessinger v. Kessinger, 360 Mich. 528, 104 N.W.2d 192 (1960).
In addition, I find the trial court’s decision to saddle plaintiff husband with the obligation of all the pre-existing tax liabilities to be inequitable. Both owe the obligation, both have the ability to pay the obligation, and both should share in payment.
Considering the entire record here, I would reverse due to what, in my opinion, is an unconscionable property distribution.
MR. JUSTICE DALY.
I concur with MR. JUSTICE HARRISON’S dissent.