IN RE THE MARRIAGE OF GLENDA LOU BROWN, PETITIONER
AND APPELLANT, AND BENJAMIN LEE BROWN, RESPONDENT
AND RESPONDENT.

No. 14057.
Submitted Oct. 13, 1978.
Decided Nov. 27, 1978.
587 P.2d 361.

418

James A. Tulley, argued, Big Timber, Paulson & Tulley, Big Timber, for petitioner and appellant.

Lee Overfelt, argued, Billings, for respondent and respondent.

MR. JUSTICE SHEEHY delivered the opinion of the Court.

Appellant, Glenda Lou Brown, brought this action in District Court, Thirteenth Judicial District, Stillwater County, seeking a dissolution of her marriage from respondent, Benjamin Lee Brown. After a trial without a jury, judgment dated August 22, 1977, was entered dissolving the marriage, awarding appellant custody of the

youngest child, child support in the amount of $75 per month, personal property she had removed from the family home, an automobile, and $25,000 as her share of the marital property. Respondent was awarded custody of the three older children and the bulk of the marital property.

Glenda Lou was thirty-four years of age and Benjamin was approximately thirty-eight years of age at the time the judgment of the District Court was entered. In July 1961, they began a common law marriage between them. At the time of the dissolution the parties had four children, all boys aged fifteen, seven, six and two years.

When they began living together Glenda and Benjamin lived in Anaheim, California. There Benjamin was employed by an equipment company and Glenda as a clerk-typist. The parties pooled their respective earnings and used them to pay their living expenses. Glenda continued to work until the birth of the parties' first son, approximately one year after they began to live together. When they left California in 1963, they had accumulated no estate and took no substantial savings accounts or other assets with them.

In April 1963, Benjamin was requested by his father to come to Montana. His father owned a ranch north of Reed Point, Montana, and wanted his son to come back and run it for him. The parties left California in April 1963 and moved to the ranch. From that time until her separation from Benjamin in 1976, Glenda was not employed outside the home.

Benjamin's father, who was elderly, lived approximately thirty miles away and occasionally Glenda would clean his house and prepare meals for him. Glenda was never employed outside the home during the course of the marriage; she had the homemaking and child raising responsibilities. In addition, Glenda would, as needed, help Benjamin with the ranch work, taking part in the calving, fence repair, livestock, building maintenance, and running errands.

Benjamin's father died in 1967. Upon his death, he left the ranch by will to Benjamin. His father had previously gifted a portion of

the ranch to Benjamin. Benjamin sold a portion of the property passing by the will to satisfy bequests to his sisters and mother. The ranch was willed to Benjamin as sole owner and no joint tenancy was ever established between Glenda and Benjamin. Benjamin acquired no other real property than that devised to him by his father.

At the time of the devise of the ranch, it was valued at $104,500. By the time of trial, it had appreciated to a value between $350,000 to $450,000. Benjamin's income tax returns for 1973, 1974 and 1975 show income from the ranch to be approximately $18,000, $15,000 and $19,000 respectively. These figures are prior to any capital gains deduction for reporting purposes and reflect net farm income as indicated in respondent's return. The ranch is free and clear of any encumbrance and respondent has very little outstanding debt.

When the parties separated Glenda kept custody of the youngest child, took her personal effects and took $5,100 that was in the joint savings account. Glenda also had some cattle that were in her name which were sold by appellant for $1,400. At the time of the trial, Benjamin continued to occupy the ranch premises and to operate the ranch. He had retained custody of the three older children and had hired a live-in housekeeper.

Glenda had moved to Big Timber and had obtained employment as a waitress at a local cafe, earning approximately $650 per month. Glenda testified that if she received custody of the children, she planned to move to southern Illinois to a community of about 8,000 people where her mother lived and would attend college part-time.

During the trial, the court took testimony from a court investigator concerning the suitability of each parent for custody and ordered a supplemental investigation on that matter. The court also conducted an in-chambers interview of two of the children (the oldest child had expressed a preference to remain with his father), which was not recorded nor were the attorneys for appellant or respondent present. In its findings and conclusions, the District Court

determined that while both parties were good parents, the wholesome environment of the ranch and the character of respondent indicated it would be in the best interests of the three older children to remain on the ranch in the care and custody of their father. The court in making this determination apparently relied in part on its unrecorded in-chambers interview with the children.

The District Court further found that all of the real property which Benjamin currently owns passed to him in sole ownership via devise from his father. The court found Glenda to be an active working rancher's wife during the marriage and determined that Glenda was entitled to a sum of $25,000 as her equitable share of the property payable in installments. The court found it in the best interests of the youngest child to be placed in the custody of Glenda and awarded $75 per month child support. The District Court made no maintenance award, finding Glenda financially capable of supporting herself and paying her own attorney's fees.

The issues presented by this appeal are as follows:

1. Did the District Court equitably divide the property acquired during the marriage as provided for in section 48-321, R.C.M. 1947?

2. Did the District Court abuse its discretion by not awarding maintenance and by reducing child support from that temporarily awarded?

3. Did the District Court properly award custody of the minor children considering the rebuttable presumption favoring the mother as custodial parent?

4. Did the District Court properly grant custody of two of the children to respondent basing its determination in part upon unreported in-chambers interviews without counsel for the parties present and upon a supplemental report made pursuant to section 48-335(1), R.C.M.1947, which was not served on Glenda?

5. Did the District Court properly award attorney's fees?

After consideration of the issues presented, we find the District Court did not equitably divide the marital assets and thus abused

its discretion. Further, we find the District Court erred in not making a record of the in-chambers interview of the children and not making specific findings of their custodial wishes.

■ The standard for reviewing the property division in a dissolution decreed by a District Court is well settled in Montana. The apportionment made by the District Court will not be disturbed on review unless there has been a clear abuse of discretion as manifested by a substantially inequitable division of the marital assets resulting in substantial injustice. *In Re Marriage of Blair* (1978), 178 Mont. 220, 583 P.2d 403, 405; *Vivian v. Vivian* (1978), 178 Mont. 341, 583 P.2d 1072, 1074; *Eschenburg v. Eschenburg* (1976), 171 Mont. 247, 557 P.2d 1014; *Porter v. Porter* (1970), 155 Mont. 451, 473 P.2d 538. We find the division of the marital assets in this case was substantially inequitable and thus constituted an abuse of discretion.

■ A review of the District Court's findings relative to the marital assets reveals the court found decisive the fact the property owned by respondent was acquired directly or indirectly through inheritance and was solely in Benjamin's name. Findings of fact No. 3 and 12. However a consideration of the applicable statute and of decisions of this Court makes clear the source of and title to marital property is irrelevant to division of such property upon dissolution of the marriage. Section 48-321(1), R.C.M.1947, states:

"In a proceeding for dissolution of a marriage . . . the court . . . shall . . . finally equitably apportion between the parties the property and assets belonging to either or both however and whenever acquired, and whether the title thereto is in the name of the husband or wife or both . . ."

We have held District Courts have the power to divide property on an equitable basis regardless of the fact that title to the property is vested in only one of the parties. *Downs v. Downs* (1976), 170 Mont. 151, 551 P.2d 1025, 1026; *In Re Marriage of Reilly* (1978), 176 Mont. 239, 577 P.2d 840. Furthermore, this Court has held an inheritance received during the marriage is a marital asset. *Morse*

*v. Morse* (1977), 174 Mont. 541, 571 P.2d 1147, 1149; *Vivian v. Vivian*, supra.

Therefore, the fact the ranch property which constitutes the whole of the marital assets was inherited solely by Benjamin and is in his name alone, is not a controlling consideration in the division of these marital assets.

The decisions of this Court following the enactment of the Uniform Marriage and Divorce Act declare that as a housewife, the wife acquires a vested interest in the property accumulated by the parties during the marriage. *In Re Marriage of Reilly*, supra; *In Re Marriage of Johnsrud* (1977), 175 Mont. 117, 572 P.2d 902, 905; *Biegalke v. Biegalke* (1977), 172 Mont. 311, 564 P.2d 987; *Eschenburg v. Eschenburg*, supra; *Downs v. Downs*, supra. In *Eschenburg*, the District Court equated the wife's contributions as homemaker and mother with the husband's as breadwinner in dividing the property and noted that while the contributions of the wife differed in kind, they were of equal weight to the financial contributions of the husband. We agreed with that assessment and affirmed the District Court's division of property. *Eschenburg*, 557 P.2d at 1016. In *Biegalke* we affirmed the District Court's considerations of the wife as homemaker, mother and part-time ranch hand in making its property division. *Biegalke*, 564 P.2d at 990. We indicated the trial court should give consideration to those contributions of a ranch wife to be equated to the financial contributions of the husband. *Biegalke*, supra.

It is therefore obvious that Glenda acquired a vested interest in the major marital asset, the ranch property, regardless of its source and title. She did so by virtue of her fourteen years as mother, housewife and part-time ranch hand. It is this interest the District Court valued at $25,000.00. We have indicated we find this valuation to represent an inequitable division of the marital asset.

In order to have a proper distribution of the marital property, we have stated the trial court must first determine the net worth of the parties at the time of the divorce. *Vivian v. Vivian*, supra; *In Re Marriage of Kramer* (1978), 177 Mont. 61, 580 P.2d 439. Here the

court made no such finding although it did indicate the property was free of any encumbrance. Testimony at trial indicated a value of $350,000 or more. Testimony also indicated the property had been valued at approximately $104,500 at the time it was devised to Benjamin. Thus, the District Court awarded to Glenda $25,000 as her share of an asset that appreciated approximately 350 percent during the marriage. True, some of this appreciation can be attributed to inflation but certainly the major part is due to the maintenance of the property as a working ranch to which Glenda obviously contributed. The valuation of Glenda's interest in this asset at $25,000, representing what the District Court considered to be her contribution to this appreciated value, is clearly inequitable and must be reversed. Because we have reversed the property division, we must also reverse the maintenance determination. "The rule is that the needs of the spouse as to maintenance and the reasonableness of such an award can only be properly determined after there has been an equitable division of the marital estate." (Citing cases.) *Vivian*, supra.

The wife has also challenged the District Court's custody award. The standard of review for custody matters was recently enunciated by this Court in *Weber v. Weber* (1978), 176 Mont. 144, 576 P.2d 1102, 1104, (quoting from *Brooks v. Brooks* (1976), 171 Mont. 132, 556 P.2d 901):

"This Court has long followed the rule that unless there is a clear abuse of discretion by the trial court, a decision on custody will not be overruled on appeal . . . In these cases this court has committed itself to the view that the welfare of the child is the paramount consideration in awarding custody and that it must of necessity, be left largely to the discretion of the trial judge. He hears the testimony, sees the witnesses' demeanor and has a superior advantage in determining those difficult problems."

Glenda has argued that all other considerations being equal, the presumption in Montana favoring the mother in custodial matters should result in custody of the children being given to her. *In*

*Re Marriage of Tweeten* (1977), 172 Mont. 404, 563 P.2d·1141, we stated "such a presumption exists, but [we] do not find it to be conclusive. In this jurisdiction each child custody case will be decided on its own facts rather than by the use of 'controlling or conclusive presumption.' " 563 P.2d at 1144. The effect of this presumption was clarified in *In Re Marriage of Isler* (1977), 173 Mont. 29, 566 P.2d 55, where this Court, after recognizing the existence of the presumption, stated in Montana "the parties proceed from the presumption and once it is overcome by a preponderance of the evidence there is no preference for the mother. In meeting this burden, the father need not prove the mother to be unfit." 566 P.2d at 58. Our review of the District Court's findings, bearing in mind the great deference we give to the District Courts in this area, convinces this Court the District Court considered the presumption to have been overcome and found the Benjamin to be the better person for custody. If the District Court's findings were complete, we would affirm the custody portion of its judgment. However, the District Court, contrary to statutory mandate and the decisions of this Court, did not make a record of the in-chambers interview with the children nor did it make specific findings as to the custodial wishes of the children.

Section 48-334(1), R.C.M.1947, provides the District Court may ·interview the child or children involved to ascertain their custodial wishes. The District Court may permit counsel to be present. In any case, ". . . [t]he court *shall* cause a record of the interview to be made and to be part of the record of the case." (Emphasis added). The District Court in the present case conducted an in-chambers interview of two of the children involved. No record was made of that interview nor were counsel present. This Court has stated in *Schiele v. Sager* (1977), 174 Mont. 533, 571 P.2d 1142, the holding of the interview pursuant to section 48-334(1), R.C.M.1947, is discretionary, however, once such discretion is exercised the statute "mandates that a record of the interview be made and that such record be part of the case record." 571 P.2d at 1145. Further, we have held that a District Court must make a specific finding stating

the wishes of the children as to their custodian. *In Re Marriage of Kramer* (1978), 177 Mont. 61, 580 P.2d 439, 444. Without the record of the interview and without specific findings as to the wishes of the children, counsel and this Court do not know with any degree of certainty the basis for the District Court's conclusions on custody matters. Because we are remanding this case for a reconsideration of the property division, we direct the District Court if it conducts an interview of the children, to make a record of such interview and futher to amend its findings to specify the custodial wishes of the children. We recognize the UMDA is still relatively new and its procedures are not yet habit. However, the legislature mandated the District Court to take certain actions and we are obligated to follow those mandates.

■ Appellant has also alleged as error the award of $75 per month child support in the final judgment arguing the court gave no reason for reducing child support from the $100 per month temporarily awarded in the order *pendente lite.* We note that the order *pendente lite* was made before the District Court heard testimony or considered the evidence in this case. It was not a determination of the merits, rather was an order giving temporary relief to appellant during the pendency of this action. As such it was terminated when the final decree in this cause was entered. Section 48-318 (6)(c), R.C.M.1947. Our task then, is to examine the final child support award to determine whether an abuse of discretion has occurred thus requiring reversal.

■ The standard of review we have recited above as to the property division is equally applicable to our consideration of the support award. *Olson v. Olson* (1978), 175 Mont. 444, 574 P.2d 1004, 1007. The District Court in making its support award must consider the factors set forth in section 48-323, R.C.M.1947. The record in this appeal reveals the court heard testimony concerning the income of the parties, the standard of living enjoyed by the family while on the ranch, and had before it the report of Mr. Guthrie who investigated the custodial arrangements. Based on this record, we cannot conclude the court erred in awarding $75

per month child support and therefore affirm that portion of the judgment.

Finally, Glenda contends the District Court erred in not awarding her attorney's fees. Section 48-327, R.C.M.1947, vests in the District Court the discretion to award costs and attorney's fees in a dissolution proceeding. When reviewing the exercise of that discretion we are guided by the standard where there is substantial evidence to support the findings of the District Court, such findings will not be disturbed on appeal. *Allen v. Allen* (1978), 175 Mont. 527, 575 P.2d 74. (Citing cases.) We have previously held a showing of necessity is a condition precedent to an award of attorney's fees. *Whitman v. Whitman* (1974), 164 Mont. 124, 519 P.2d 966, 970. No such showing was made in this appeal. Appellant testified she was working as a waitress earning approximately $650 per month. In addition she was receiving $100 per month child support prior to the entry of judgment in this case and $75 per month thereafter. When she and Benjamin separated, she took approximately $5,000 from the savings account, though now she claims in her appeal brief this has been exhausted. Viewing the whole record, we conclude the decision of the District Court not to award the attorney's fees and costs was supported by substantial evidence and we therefore affirm that portion of the judgment.

We have not commented on the failure to serve the supplemental report on Glenda as required by section 48-335(3), R.C.M.1947, for the reason that report is before the parties now for any possible use on retrial. It is statutorily required, of course, that any future reports be served upon the parties by furnishing them a copy.

This case is reversed and remanded for a further decision on the following items:

1. A finding of the value of the marital property including all the assets, regardless of title or source of acquisition.

2. An equitable division of the marital property, taking into consideration the value of the ranch. In this connection, we note it is not necessary that the Court order the ranch sold and the proceeds divided. In view of the income derived by Benjamin, the

Court may order Glenda's share paid by the husband over a period of years, with security to the wife. By way of suggestion, if the District Court should determine that the wife's entitlement was the sum, say, of $75,000, it could order such sum paid at the rate of $5,000 per year, without interest, until fully paid, with the proviso that if the land was sold or transferred by operation of law, the unpaid amount should be a lien in wife's favor on the land.

3. Custody of the children, after a further hearing, and if interviews of the children are conducted, they shall be recorded, and specific findings made as to the children's wishes on custody.

The remainder of the decree of dissolution is affirmed. Costs of appeal to Glenda.

MR. CHIEF JUSTICE HASWELL and JUSTICES DALY, SHEA and HARRISON concur.