No. 14728

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

_____

IN RE THE MARRIAGE OF

VERNA B. JACOBSON,

                        Petitioner and Respondent,

      -vs-

THEODORE F. JACOBSON,

                                APPELLANT

                Respondent and Respondent.

_____

Appeal from:  District Court of the Third Judicial District,
             Honorable Robert J. Boyd, Judge presiding.

Counsel of Record:

    For Petitioner:

        Poore, Roth, Robischon & Robinson, Butte, Montana

    For Respondent:

        Corette, Smith, Dean, Pohlman & Allen, Butte, Montana
        James J. Masar, Deer Lodge, Montana

_____

                Submitted on briefs: August 2, 1979

                        Decided: OCT - 9 1979

Filed: OCT - 9 1979

_____ Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This is an appeal from a judgment of the District Court of the Third Judicial District dissolving the marriage of Theodore and Verna Jacobson and distributing the marital property of the parties. The husband appeals from that portion of the decree affecting the property distribution.

The parties were married in Butte, Montana, on March 16, 1952. At the time of trial, Verna Jacobson was 47 years of age and Theodore Jacobson was 49. The parties have two children, a son aged 22 residing in Alaska, and another son aged 18 who graduated from high school in 1978 and resides on the family ranch near Deer Lodge, Montana, in Powell County. Ted Jacobson was raised on the ranch and his sole occupation has been ranching. His formal education ended in the ninth grade. Verna Jacobson is a high school graduate who worked as a secretary prior to her marriage to Ted.

In 1948 Ted and his brother formed a partnership to operate the ranch. In that year they leased a portion of the ranch from their father for the purpose of raising potatoes. In 1953 the brothers and their wives leased the entire home ranch and bought some cattle from their father, and in 1959, they purchased the ranch on a contract for deed. The partnership continued until 1969. Thus, when the parties were married in 1952, Ted and his brother were already in the process of taking over the operation of the ranch. The District Court found that "Ted Jacobson was and is a hard-working and able rancher." Through his efforts and knowledge of the business, the value of the Jacobson ranch increased substantially both during the time it was operated in partnership with his brother and after the

-2-

partnership terminated in 1969. Throughout the marriage of the parties, Ted did the outside work on the ranch. In addition to the usual ranch work he made substantial improvements to an existing house located on the ranch, and he and his brother later assisted in building a new house in which the parties resided. A significant part of the increased value of the ranch can be attributed to the installation of a lateral irrigation system by Ted and his brother in 1966 and the installation of a sprinkler irrigation system by Ted in 1975.

For her part, Verna performed the duties of a ranch wife and homemaker for over 25 years. Although she did not participate in the outside work, she spent great amounts of time caring for her two sons, the elder of whom had heart problems discovered at an early age, and the younger, who was found at an early age to have a serious physical ailment. She spent a considerable amount of time working with the younger son to assist him in completing school. Until 1969 Verna boarded the hired hands, generally feeding them three meals a day in the family home. In addition to these contributions, she did the bookkeeping for the ranch after the partnership between Ted and his brother terminated in 1969, maintaining the ranch record books and accounts, keeping track of ranch income and expenses, paying the bills, paying the ranch help, keeping the records necessary for ranch income withholding, social security, and workers' compensation, and delivering this information to their accountant each year for the purposes of preparing income tax returns. She also occasionally drove to town to pick up ranch supplies.

The District Court, after reciting the contributions to the marriage made by each of the parties, concluded that the parties had made equal contributions to the marital estate and that the wife had acquired a vested one-half interest in all property acquired by the parties during their marriage.

> "None of the property now owned by the parties was acquired directly or indirectly through inheritance or gift and the Court finds that the wife's contribution as a homemaker and mother, along with the husband's contribution in doing work on the ranch, is entitled to equal weight and the Court finds that Mrs. Jacobson acquired a vested one-half (1/2) interest in the property accumulated by the parties during the marriage." (Emphasis supplied.)

Pursuant to this finding the District Court's judgment entered on January 25, 1979, gives the husband the option to purchase the wife's interest in the marital property. The total marital property, consisting primarily of the family ranch, was found to have a value of $1,147,786. Within three months of the decree, the husband has the option to either pay to the wife one-half of the total sum or to pay 20 percent down with the balance payable in thirty equal annual installments with interest at the rate of 7 percent per annum. These installments are to be secured by a mortgage on all real property. If the husband fails to exercise his option to purchase the wife's interest, the property is to be sold on the market for cash at a price agreeable to the parties. If no buyers are secured, the property is to be sold at a public sale within a further three months from the date of the decree.

The appellant husband raises two issues on appeal:

1. Did the District Court abuse its discretion and fail to equitably apportion the marital assets by neglecting to consider the more substantial contributions of the husband

-4-

to the development and maintenance of the marital property?

2. Did the District Court abuse its discretion in providing as an alternative a purchase by the husband of one-half of the parties' marital assets at an interest rate of 7 percent per annum?

Section 40-4-202, MCA, states in relevant part:

"In a proceeding for dissolution of a marriage . . . the court . . . shall . . . finally equi-tably apportion between the parties the property and assets belonging to either or both, however and whenever acquired and whether title thereto is in the name of the husband or wife or both. In making apportionment the court shall consider the duration of the marriage and [other factors] . . . The court shall also consider. . . the contribution of a spouse as a homemaker or to the family unit." (Emphasis supplied.)

The standard for review of a District Court's disposition of marital assets upon a dissolution of marriage is well settled:

"A District Court has far-reaching discretion in resolving property divisions, and its judgment will not be altered unless a clear abuse of discretion is shown. Kaasa v. Kaasa (1979), _____ Mont. _____, 591 P.2d 1110, 1113, 36 St.Rep. 425, 428; Kramer v. Kramer (1978), _____ Mont. _____, 580 P.2d 439, 35 St.Rep. 700; Eschenburg v. Eschenburg (1976), 171 Mont. 247, 557 P.2d 1014. The test for reviewing the District Court's discretion is: Did the District Court in the exercise of its discretion act arbitrarily without employment of conscientious judgment, or exceed the bounds of reason in view of all the circumstances? Kuntz, 593 P.2d at 43; Jorgensen, supra; Kramer, supra; Zell v. Zell (1977), _____ Mont. _____, 570 P.2d 33, 34 St.Rep. 1070; Ber-thiaume v. Berthiaume (1977), _____ Mont. _____, 567 P.2d 1388, 34 St.Rep. 921." Aanenson v. Aanenson (1979), _____ Mont. _____, _____ P.2d _____, 36 St.Rep. 1525, 1528.

The duty of the District Court is to consider the statutory criteria and equitably apportion the marital assets. Each case must be looked at individually with an eye to its unique circumstances. Aanenson, supra; Jorgenson v. Jorgenson (1979), _____ Mont. _____, 590 P.2d 606, 609,

36 St.Rep. 233, 237; Cook v. Cook (1972), 159 Mont. 98, 104, 495 P.2d 591. "An equal division under normal conditions of property accumulated through joint efforts is not regarded as unreasonable." Cook, 159 Mont. at 103, 495 P.2d at 594, quoting Johnson v. Johnson (1960), 137 Mont. 11, 17, 349 P.2d 310. See also Zell v. Zell (1977), ____ Mont. ____, 570 P.2d 33, 34 St.Rep. 1070; Roe v. Roe (1976), 171 Mont. 79, 83, 556 P.2d 1246, 1248.

In the present case the District Court detailed the respective contributions of the parties in its findings of fact. There is substantial evidence in the record to support the District Court's equal distribution as an equitable apportionment of the marital property. There was no abuse of discretion by the lower court, which followed the statutory mandate of section 40-4-202, MCA, to "consider . . . the contribution of a spouse as a homemaker or to the family unit."

Appellant's second contention is more troublesome. Appellant states that it has always been the policy of the courts of this state that a farm or ranch should be kept intact and operated as a unit. Appellant argues that the option afforded to him by the District Court to purchase his former wife's interest in the family ranch by paying 20 percent down and thirty annual installments at 7 percent interest is not an economically realistic alternative. He contends that the ranch does not generate sufficient income to support such payments, that it will have to be sold to satisfy the District Court decree, and thus, that it will be lost to the sons of the parties who are opposed to its sale, particularly the younger son, who is now working on the ranch. It is alleged, therefore, that the District Court abused its discretion.

It is clear that a District Court may make an equitable distribution of the marital property and yet abuse its discretion in carrying out the award. In Kruse v. Kruse (1978), ___ Mont. ____, 586 P.2d 294, 298, 35 St.Rep. 1502, 1507, the trial court properly made an equal apportionment of the marital assets, but abused its discretion in failing to consider the assets at their current market value which resulted in the wife receiving less than her equal share.

Montana cases have accepted the premise that a ranch or farm should be kept intact and operated as a unit. A policy to that effect is reflected in decisions involving the disposition of farming and ranching property: Kaasa v. Kaasa (1979), _____ Mont. ____, 591 P.2d 1110, 1113, 36 St.Rep. 425, 428; In re Marriage of Brown (1978), ____ Mont. ____, 587 P.2d 361, 35 St.Rep. 1733; Biegalke v. Biegalke (1977), 172 Mont. 311, 564 P.2d 987; Hunnewell v. Hunnewell (1972), 160 Mont. 125, 500 P.2d 1198, 1202.

Biegalke involved facts similar to those in the present case. In referring to the District Court's property distribution whereby the husband was given the opportunity to purchase his former wife's marital interest in the family farm by making a down payment and paying the remaining balance in annual installments, this Court stated, "[t]he division was based on the premise that the ranch be kept intact and operated." Biegalke, 172 Mont. at 314. Likewise in Hunnewell, where the couple moved onto the ranch which had been owned by the husband's father and where the husband had been a rancher all his life, the court gave the husband the option to meet all bids to purchase his former wife's interest in the marital estate by making a down payment and paying the remaining balance in annual installments, stating

"[t]he purpose of this provision is to permit [the husband] to continue to ranch and farm the premises without being met with a sudden emergency to raise money, the Court being aware that all the property is presently mortgaged and such an emergency demand might cause hardship." Hunnewell, 500 P.2d 1202.

The District Court valued the marital estate, consisting primarily of the family ranch, at $1,147,786 and found that Verna Jacobson was entitled to one-half of that property as her marital share. Pursuant to this finding, the District Court's judgment gives Ted Jacobson the option to purchase Verna's interest in the marital property. Within three months of the decree, the husband must purchase her share by paying her one-half of the total sum in cash, or exercise his option to pay her 20 percent down with the balance payable annually in 30 equal installments with interest at 7 percent, the installments secured by a mortgage on the real property. Otherwise, the ranch will be sold on the market or at a public sale to generate cash to satisfy Verna's marital share.

Translated to dollar amounts, the installment option entails annual installments of approximately $34,000. Appellant contends that this amount is practically equivalent to the total annual cash income of the ranch before purchases of equipment are taken into consideration. He argues that after the purchase of necessary replacement equipment, annual cash income for the ranch has averaged about $16,000 per year. Therefore, according to appellant, the ranch does not generate sufficient income to support the installment payments that would be required under the purchase option given him by the District Court, and so the District Court allegedly abused its discretion.

The District Court, while it did make extensive findings of fact concerning the marital assets and each party's contribution thereto, did not make a finding to the effect that it would be financially possible for appellant to satisfy the judgment short of selling the ranch. It is, however, implicit in the District Court's judgment that the court considered the alternatives in the decree to be economically realistic considering the ranch's income-producing capacity and its borrowing capacity. There is sufficient evidence in the record to support such a conclusion; therefore, there was no abuse of discretion.

The evidence in the record supporting the conclusion that the installment purchase option is an economically realistic alternative is as follows: (1) the ranch is unencumbered save for the District Court decree, from which the court may have inferred that its borrowing capacity is high; (2) the husband's brother and former partner in the ranch is a rancher and a banker who might be able to procure a loan or lend money for the purchase of the wife's interest; (3) there is a cash asset held in trust by one of the attorneys for the wife in the amount of $33,792 less certain expenses, representing the balance of the sale of cattle in the previous year; (4) the cash income of the ranch has averaged approximately $35,000 a year before equipment purchases, and $16,000 after purchases of equipment; and (5) the parties' accountant testified that the maximum annual payment that an operator of the ranch could reasonably be expected to pay out of ranch income to purchase an equity in the ranch would be the total cash flow income of the ranch.

It must be remembered that the primary right to be considered in disposing of marital property is the right of

each party to an equitable apportionment of the marital assets. While it is the policy of the courts of this state to avoid splitting up a ranch or forcing its sale where there is any reasonable alternative, that policy, however commendable, cannot be used to override the wife's right to an equitable share of the marital property. In the present case, the District Court gave the husband the option to purchase his former wife's share by paying 20 percent down and paying the remaining balance in annual installments over thirty years at 7 percent interest. The wife is 47 years of age. A payment schedule of more than thirty years would not allow her to receive the equal marital share to which she is entitled within her life expectancy. The 7 percent interest rate is below that charged by commercial and governmental lending institutions, The case of In re Marriage of Brown (1978), ____ Mont. ____, 587 P.2d 361, 367, 35 St.Rep. 1733, merely suggested that the District Court could order the remaining balance paid without interest. It did not say that the trial court could not allow interest, and the allowance of interest lies within the court's sound discretion.

The judgment of the District Court is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

-10-