No. 12795

IN THE SUPREME COURT OF THE STATE OF MONTANA

1974

---

DOROTHY ARLEEN LOVE,

Plaintiff and Appellant,

-vs-

ERNEST LOVE,

Defendant and Respondent.

---

Appeal from: District Court of the Fifth Judicial District,
Honorable Frank E. Blair, Judge presiding.

Counsel of Record:

For Appellant:

Schulz and Davis, Dillon, Montana
Carl M. Davis appeared and John Warren, argued,
Dillon, Montana

For Respondent:

Neil Haight argued, Helena, Montana
W. G. Gilbert, III, appeared, Dillon, Montana

---

Submitted: November 21, 1974

Decided: DEC 2 6 1974

Filed: DEC 2 6 1974

Thomas J. Kearney
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is a divorce and child custody case. The district court of the fifth judicial district, county of Beaverhead, granted plaintiff mother Dorothy Arleen Love a divorce but granted custody of two minor children to defendant father Ernest Love. Plaintiff moved to alter and amend the trial court's findings of fact and conclusions of law and for a new trial, which motions were denied and appeal was taken.

Two issues are presented for consideration:

1. Whether the trial court abused its discretion by awarding custody of the parties' two minor children to the father where there was no evidence showing the mother was not a fit and proper person to be entrusted with the custody of her children?

2. Whether the trial court erred by refusing to grant the plaintiff's motion for a new trial?

Plaintiff mother and defendant father had been married previously, not only to each other, but to persons not parties to this action.

The mother married a Mr. Vezina in 1945 and had three children by him. The three children of this marriage are Robert, age 27; Linda, age 25; and Steven, age 14. This marriage terminated with Mr. Vezina's death in 1959.

The father was married previously and has five children by other women. These children are Danny, age 21; Dennis, age 18; Dale, age 14; Marie Suzette, age 13; and Robert age 5. None of these children has ever been in his custody after a divorce, nor has he ever contributed to their support.

The children of the present marriage are John aged 11; and Jeffrey aged 4.

The children of Dorothy's marriage to Mr. Vezina have been in her custody throughout their lives and have been raised with the Love children as siblings, notwithstanding their biological half-blood relationship. Particularly is this true with respect to the younger ones who have been raised together as brothers.

Defendant Ernest is unable to work due to disabilities and lives on approximately $330 per month from social security and Veterans Disability benefit payments. He occasionally supplements his income with odd job work. At the time of the divorce, he had an equity of over $1,000 in a small home valued at approximately $6,000.

Plaintiff Dorothy's income was $352 monthly, consisting of $164 representing Social Security benefits for her son Steven Vezina, $108 Social Security benefits for herself and the parties' two children; and approximately $80 in wages for a cleaning job. Due to the divorce and the giving of custody of the two children to defendant father her income from social security for the benefit of those children terminated.

According to the testimony one problem of the marriage concerned Dorothy's oldest son, Robert. Dorothy testified that Ernest was jealous of all her children by Vezina but particularly Robert whom Ernest testified was an alcoholic and used drugs. Robert is a Viet Nam veteran who receives treatment at Fort Harrison Veterans hospital in Helena. His disabilities were not designated.

Whatever Robert Vezina's responsibility for the parties' marital difficulties, it was confused by the trial court with the role played by Steven the 14 year old. The trial court ascribed Robert's character to Steven, even though Robert had not lived at the family home for several years, although he visited there and was in Dillon at the time Dorothy was either ordered out of the home, as she testified, or left of her own free will, as Ernest testified.

Both parties agree that the 14 year old Steven never caused any problems and in fact was a fine influence on his younger brothers. Dorothy argues that the trial court based its decision on a desire to separate the parties' children from Robert, who seldom visits his mother, and a reading of the court's findings indicates that this is the problem. The court found in its modification order of a previous finding:

"That plaintiff and defendant have had much trouble over the visits of Robert Vezina, a son of the plaintiff by a previous marriage. The court's disposition of the custody of the Love children will correct the situation so that Mrs. Love can entertain her son, Robert, in her home from time to time as occasion requires and enjoy every other week-end with the two boys involved in this action."

Here, the principal issue is to determine whether, under the facts, the trial court abused its discretion in awarding the custody of the two minor children to the father, rather than to the mother.

No evidence contested or disputed the fitness of the mother to have custody of the children. The trial court noted in its memorandum that while he made no ruling on her fitness to have custody, that:

"There was no occasion to do so since the principal care and custody was placed in their father. The law neither does nor requires idle acts. See section 49-124, R.C.M. 1947.

"Complaint is made because we found it was for the best interests of these two boys to be raised by their father. We did not want to separate these boys. We interviewed the older boy and found no reason in the interview, to award them to the mother. In fact, the Court observed Plaintiff and Defendant very carefully while testifying and based upon his trial practice of 50 years involving such matters, arrived at the conclusion that these two boys would be much better cared for by their father. The hatred by the Plaintiff for their father, was quite apparent and her refusal to permit him to see them prior to the trial was indefensible. * * *."

This perhaps was the basis upon which the trial judge made his decision not to make a finding of fitness for the mother for the record is bare of any evidence that she was not a good mother. Recognizing that the trial judge has well over 50 years of trial experience, we cannot but help observe that in most divorces, and especially cases where the custody of children is being determined, that dislike or hatred evidenced by the contestants is not novel nor unusual. In custody cases, as here, the court should determine the fitness of both parties and it was error not to so rule here, where we are considering children of tender years.

Against the trial court's observation that the mother evidenced hatred for the father, we have a record made in the trial court of a total failure on the part of that father to make any effort to support children of other marriages even though in one instance he

- 4 -

was taken to court to enforce the payments to some of those children and found guilty of contempt.

The controlling statutory law is section 91-4515, R.C.M. 1947, and the cases arising thereunder. The pertinent parts of this statute are:

> "Rules of awarding custody of minors. In awarding the custody of a minor, or in appointing a general guardian, the court or officer is to be guided by the following considerations:
>
> "1. By what appears to be for the best interests of the child in respect to its temporal and its mental and moral welfare, and if the child be of sufficient age to form an intelligent preference, the court may consider that preference in determining the question.
>
> "2. As between parents adversely claiming the custody or guardianship, neither parent is entitled to it as of right; but other things being equal, if the child be of tender years, it should be given to the mother; if it be of an age to require education and preparation for labor or business, then to the father."

The trial judge in his memorandum quoted from Damm v. Damm, 82 Mont. 239, 247, 266 P. 410, noted:

> "* * * and it is only on a showing of manifest abuse of such discretion that the award made by the trial court will be disturbed."

We agree that this is a controlling factor on review, but in looking at Montana's statutory law section 91-4515(2), R.C.M. 1947, we note that this Court has in its recent applications of the statute laid considerable import to the position of the mother in the case of children of tender years. Here, we have two young boys John Michael, age 11, and Jeffery, age 4. They have grown up with their half-brother Stephen, age 14, who everyone agrees is a fine young man and who has much good influence over his younger brothers. We can see no benefit in taking the two boys away from the influence of a good mother and an exemplary older brother and awarding them to a father because the court did not want to separate the blood brothers.

This Court in a recent case, McCullough v. McCullough, 159 Mont. 419, 498 P.2d 1189, where custody had been given the father due to the emotional difficulties of the mother at the time of the divorce, awarded her custody after a hearing that showed the mother

had remarried, had overcome her emotional difficulties and had quit a job in order to raise her child. The Court found that it was in the best interests of the child to be raised by the mother.

This Court in Hoppe v. Hoppe, 138 Mont. 239, 241, 356 P.2d 44, citing Freeland v. Freeland, 99 Wash. 482, 159 P. 699, speaking to the logic of our statutory provisions noted:

> "'Mother love is a dominant trait in even the weakest of women, and as a general thing surpasses the paternal affection for the common offspring, and, moreover, a child needs a mother's care even more than a father's. For these reasons courts are loathe to deprive the mother of the custody of her children, and will not do so unless it is shown clearly that she is so far an unfit and improper person to be intrusted with such custody as to endanger the welfare of the children!'"

See also: Trudgen v. Trudgen, 134 Mont. 174, 176, 329 P.2d 225.

In an earlier case, but in line with the philosophy of this Court, in considering the custody of children of tender years, Ex parte Bourquin, 88 Mont. 118, 124, 290 P. 250, this Court said:

> "* * * We conceive the law to be that it is our duty to award the infant child to the mother, unless she has by her conduct forfeited that right, that is, that it be made to appear that the mother is unfit or incompetent to take charge of it, or unless the welfare of the child for some special or extraordinary reason demands a different disposition."

In the instant case there is no evidence that the plaintiff mother was unfit to have custody of these children, neither was any evidence introduced suggesting a "special or extraordinary reason" for not finding her a fit person to have custody.

The judgment of the district court is reversed with directions to award the custody of the two minor children to plaintiff mother, subject to such visitation rights for the father as the court may see as fit and proper.

_____
                    Justice

- 6 -

We Concur:

---------------------------------------
   Chief Justice

*Gene B. Daly*
---------------------------------------
*Wesley Castles*
---------------------------------------


---------------------------------------
   Justices.

Mr. Justice Haswell specially concurring.

I concur in the result but not in all that is said in the foregoing opinion.

Specifically I do not agree with the statement that the trial court in all cases should rule on the fitness of both parents for custody of children of tender years. In many cases, the mother's claim to custody of a small child will prevail irrespective of the fitness or unfitness of the father. To require a finding of unfitness of the father in such a case adversely affects payment of child support, exercise of visitation rights, and related conflicts--all without purpose.

_____
Justice