No. 14316

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

---

DARLENE L. WILSON,

                Petitioner and Appellant,

    -vs-

WILLIAM A. WILSON,

                Respondent and Respondent.

---

Appeal from:  District Court of the Fifth Judicial District,
           Honorable Frank E. Blair, Judge presiding.

Counsel of Record:

    For Appellant:

        Schulz, Davis & Warren, Dillon, Montana
        Thomas Dooling, Dillon, Montana

    For Respondent:

        W. G. Gilbert III, Dillon, Montana

---

Submitted on briefs:  October 30, 1978

Decided:  FEB  1979

Filed:  FEB  1979

Thomas J. Kearney
_____ Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This appeal is brought by Darlene Wilson from a judgment of the District Court of the Fifth Judicial District, County of Beaverhead, in which the court granted William Wilson, her former husband, custody of their three minor children. Mrs. Wilson (now Parks) contends the District Court erred in two respects and its custody decree should be reversed and custody granted to her. First she argues the District Court gave too much weight in its custody findings to her relationship with one Richard Parks during the period after her separation from her husband. Second she contends that the District Court committed reversible error by conducting a private off-record interview in chambers with her two oldest children, aged nine and ten years, for the purpose of determining with which parent they preferred to live.

The issues for this Court's determination are:

1. Does a District Court abuse its discretion in a child custody case when it considers a parent's relationship and conduct with another person in determining the best interests of the children?

2. It is reversible error for a District Court to conduct an off-record interview with the children of a dissolved marriage to determine with which parent they would prefer to live?

William and Darlene Wilson were married at Billings, Montana, in 1963. They had three children born in 1967, 1968 and 1972. Darlene Wilson presented her petition for dissolution to the District Court on September 27, 1977, alleging that her marriage with respondent was irretrievably

broken and futher alleging that it was in the best interest
of the three minor children to be in her custody. On Octo-
ber 4, 1977, the District Court granted petitioner temporary
custody of the children and ordered respondent to pay $75
per child per month for the support of the parties' children.

The District Court ordered the parties to attend con-
ciliation conferences with local clergy but these conferences
proved unsuccessful. On February 14, 1978, the court granted
a dissolution and ordered a hearing on child custody, child
support and property division. Prior to the custody hearing
respondent filed a counterclaim in which he alleged that the
best interests of the minor children would be served if he
were granted custody.

At the hearing the district judge, sitting without a
jury, took testimony on the life styles of respondent and
petitioner and concluded that respondent was better suited
to raise the children than was petitioner. In a "Memo of
the Court" dated March 24, 1978, the judge summarized his
view of the testimony relating to Mrs. Wilson's relationship
with Parks and how that relationship affected her ability to
properly raise her children:

> "We have recited the foregoing to show that the
> plaintiff has been trapped in a mad infatuation
> over a comparative male stranger, establishing
> intimate relations with him, going so far as to
> scandalize her children of tender years by per-
> mitting her daughter to see them in bed together,
> breaking up her home and the home of her children,
> when at the outset of her philandering she con-
> fessed her love for the father of her children.

> "In short, Mrs. Wilson is not a fit and proper
> person to entrust three innocent children to her
> custody, care and control."

In contrast the judge concluded that the children's needs
for proper upbringing would be met if custody were granted
to their father:

"These children need a good moral atmosphere and surroundings to mature in.  All of these things they will have in the home of their father . . ."

In its findings and conclusions dated March 24, 1978, the District Court stated that the children were disturbed by their mother's relationship with Parks and that their best interests would be served by granting custody to their father.  The court also noted the results of its in-chambers interview with the two oldest children, that they preferred to live with their father.

On appeal petitioner contends the court abused its discretion by placing emphasis on the moral atmosphere in her home, especially the matter of her relationship with Parks. She argues that the court's finding that she is not a "fit" parent is not supported by competent evidence, but rather only by an "indiscretion" on her part which "in a strictly religious sense constitutes a sin . . ."  Petitioner cites Love v. Love (1975), 166 Mont. 303, 533 P.2d 280, to support her argument that the mother should be given some degree of preference and the need to show not only that the mother is unfit but also that the father is fit to care for the children.

This contention, however, must be viewed in the light of two principles which this Court has firmly established. First, this Court does not substitute its judgment for that of the District Court.  The paramount consideration in a child custody case is the welfare of the children.  The District Court has a much better opportunity than this Court to make the determination of how the children's welfare will be best served and thus the custody decision is left largely to that court's discretion.  Unless the District Court has clearly abused its discretion, its custody decision will not be overruled.  In re Marriage of Brown (1978), ____ Mont.

-4-

_____, 587 P.2d 361, 364, 35 St.Rep. 1733, 1738. Second, the presumption in favor of granting custody to the mother is never conclusive. Instead "each child custody case will be decided on its own facts rather than by the use of 'controlling or conclusive presumption.'" In re Marriage of Tweeten (1977), _____ Mont. _____, 563 P.2d 1141, 1144, 34 St.Rep. 337, 341. The maternal preference presumption still exists, but its use is limited to those cases in which the father has not overcome it by a preponderance of evidence showing him to be the more fit parent to have custody. In re Marriage of Isler (1977), ___ Mont. _____, 566 P.2d 55, 58, 34 St.Rep. 545, 548. To overcome the presumption the father need not show that the mother is unfit but only that the children would be better off with him. In re Marriage of Brown, _____ Mont. at _____, 587 P.2d at 366, 35 St.Rep. at 1739; In re Marriage of Isler, _____ Mont. at _____, 566 P.2d at 58, 34 St.Rep. at 548. To the extent that _Love_ holds otherwise, it is no longer followed.

In this case the record shows sufficient evidence to support the District Court's finding that the Wilson children would be better off with their father. Section 48-332, R.C.M. 1947, now section 40-4-212 MCA, sets forth five criteria upon which the District Court is directed to make the determination of what custodial arrangement will be in the best interest of the children. These are: the wishes of the parents as to custody; the wishes of the children; the children's interaction and interrelationship with their parents, with each other, and with others who may significantly affect their best interests; the children's adjustment to home, school and community; and, the mental and physical health of all individuals involved. From the

-5-

evidence presented, it is clear that both parents wish to have custody of the three children. The two older children told the district judge that they would prefer to live with their father. There was testimony from the father that the children were not willing to return to their mother's trailer after weekend visits with him.

The court also heard testimony concerning the home life to which the children were exposed during Darlene Wilson's temporary custody. The parties argue about the effects on the children of Darlene's permitting Richard Parks to spend nights with her before they were married. The District Court attached some significance to this relationship as an indication of Darlene's fitness as a parent. But the evidence does not stop with this relationship. The court took testimony on William Wilson's abilities to care for the children and his propensities to provide them with a proper upbringing. William showed evidence of steady monthly income and adequate housing. He testified that his job would not prevent him from keeping his youngest son with him during the day and that there were often other children around at the farms where he delivers feed and fertilizer. He also testified that he had experience in preparing meals for the children and getting them off to school before the separation when his wife had to leave early in the morning for work. Finally, the court heard testimony of his regular church attendance and his willingness to assist the children in their moral and spiritual development. The children will have to spend some time in day care at the end of each school day if their father has custody, which, from the record, would apparently not be necessary if they stayed with their mother. In balance, the court concluded that the

father is better suited to provide for the best interests of the children.

While a relationship such as Darlene Wilson had with Richard Parks may not in itself be adequate to support a finding of her unfitness as a parent, especially in a change of custody proceeding, Foss v. Leifer (1976), 170 Mont. 97, 550 P.2d 1309, the District Court should not be directed to ignore a parent's activities in the home. In any event, the scope of this review remains limited and the issue is not whether the evidence shows the mother to be unfit but only whether the evidence supports a conclusion that the children's welfare would be best served by granting custody to the father. In this case it does. There is no showing by petitioner that the District Court manifestly abused its discretion by granting custody to the father, although it may not have been necessary to characterize Darlene Wilson as an unfit parent.

Petitioner's second issue deals with the off-record interview which the judge held with the two oldest Wilson children. At the request of William Wilson during the custody hearing, the district judge interviewed the children in chambers. They were accompanied by Terri Stanisich, a guidance counselor at their school. No record was made, and neither parent was represented at this meeting. At a separate hearing before a different district judge, Terri Stanisich testified that she brought the children into the chambers where the judge conducted the interview. She said that the judge first asked a general question about school and teachers, then asked the children which parent they preferred to live with.

"So then he asked them which parent, I don't remember just how he worded it, but which parent they would prefer to live with, and they answered, their father. Both of them, and they both were nodding their head when they said it."

Following the interview, the District Court entered a finding that the children preferred to live with their father.

Section 48-334(1), R.C.M. 1947, now section 40-4-214(1) MCA, provides that the court "may interview the child in chambers to ascertain the child's wishes as to his custodian and as to visitation". It leaves the court discretion to permit counsel to be present. However, it also mandates that when a court does interview children in chambers, it "shall cause a record of the interview to be made and to be part of the record in the case." Whether the failure to make a record in this case requires a remand is the question presented here. The lack of both a record of the interview and a specific finding as to the children's preference necessitated a remand in In re Marriage of Brown, ___ Mont. at ___, 587 P.2d at 366, 35 St.Rep. at 1739. See also, In re Marriage of Kramer (1978), ___ Mont. ___, 580 P.2d 439, 444, 35 St.Rep. 700, 706. The rationale of the Court in Brown was that without these things, it was impossible to determine the basis for the District Court's custody ruling:

"Without the record of the interview and without specific findings as to the wishes of the children, counsel and this Court do not know with any degree of certainty the basis for the District Court's conclusion on custody." ___ Mont. at ___, 587 P.2d at 366, 35 St.Rep. at 1739.

While the practice of conducting off-record interviews is not desirable for the reason given in Brown, the lack of a record alone has not always required reversal. The parties to the custody proceeding may even stipulate that no record

will be made and provided the wishes of the children as to custody are followed, a remand may not be necessary. Counts v. Chapman (1979), ____ Mont. ___, ___ P.2d ____, 36 St.Rep. 89, 93-94. In the present case, the District Court did make a finding as to the children's wishes and entered its decree according to those wishes. The separate hearing in which Terri Stanisich testified provides a view of what happened during the interview, which supports the District Court's findings. Thus, the particular problems with the lack of finding and record which required a remand in Brown are not present here and it appears that a remand for the purpose of an "on-record" interview would serve little purpose. Under the circumstances of this case, no remand is necessary.

The decree of the District Court granting custody to William Wilson is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices

-9-