No. 96-450

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

IN RE THE MARRIAGE OF

CATHERINE QUINN,

      Petitioner and Respondent,

  and

SCOTT QUINN,

      Respondent and Appellant.



APPEAL FROM:  District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable Ed McLean, Judge Presiding.


COUNSEL OF RECORD:

      For Appellant:

      Christopher Daly, Missoula, Montana


      For Respondent:

      Lucy T. France, Garlington, Lohn & Robinson,
Missoula, Montana


Submitted on Briefs: January 9, 1997

Decided: February 18, 1997

Filed:

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1995 Internal Operating Rules, the following decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of the Supreme Court and by a report of its result to State Reporter and West Publishing Companies.

Scott Quinn and Catherine Quinn were divorced on May 6, 1996. Scott appeals from the opinion, order and decree of the Fourth Judicial District Court, Missoula County, affirming the Special Master's recommended findings of fact and conclusions of law. We affirm.

The following three issues are raised on appeal:

1. Did the District Court abuse its discretion when it awarded sole custody to Catherine?

2. Did the District Court abuse its discretion when it required supervised visitation?

3. Were Scott's equal protection rights violated because he was financially unable to hire an expert to testify on child custody and visitation?

Scott and Catherine were married in 1980. Four children were born of the marriage: Summer Quinn, Aurora Quinn, Darius Quinn, and Elias Quinn. Catherine has obtained her GED and hopes to attend the University of Montana. Two children have had emotional problems, and Catherine takes them to therapy. Catherine also spends a significant amount of time reading to her children and

helping them with their school work. She is especially active with Darius, who is developmentally disabled.

Scott quit his job in Washington and moved to Missoula in June 1995, where he lived at a KOA campground. Later, he obtained a voucher to live in subsidized housing. At the time of the hearing, he had not sought employment. Scott obtained money by doing "little spot jobs here and there," but had not contributed money to Catherine since he realized that his marriage with her was over. He applied for Social Security Disability, claiming a "head injury, drugs and alcohol," but was denied benefits.

On April 26, 1995, Catherine petitioned for dissolution of marriage. The court appointed a guardian ad litem to conduct an evaluation of the parties and their children. She recommended that sole custody be granted to Catherine and that Scott receive supervised visitation until he completed a psychological evaluation.

A custody and visitation hearing was held before Special Master Susan Leaphart. She determined that Catherine should be awarded sole custody and that Scott should continue exercising supervised visitation. The following relevant facts were included in the Special Master's recommended findings and conclusions:

> Scott has been diagnosed with a borderline personality disorder. Its characteristics include unstable interpersonal relationships, affective instability, and behavioral impulsivity. Scott admitted that he had told Elias that Catherine had AIDS and was going to die. Scott did not think this statement was harmful. Scott admitted that he had attempted to force Catherine to have sex with him without her consent. He has smoked marijuana in front of the children and states that he "supposes it's harmful to the kids." Scott admits

3

tossing cold coffee at Catherine and threatening to stuff "clean panties in her mouth."

Scott admits opening a car door while driving to Spokane and threatening to jump out. He also admits telling Summer that he was not a virgin anymore. He has punched walls, thrown a television, and tossed a chair off the porch of Catherine's home. He harbored Summer and Aurora when they ran away from home. Scott has had chemical dependency problems with alcohol and marijuana.

On May 6, 1996, the District Court issued its opinion, order and decree, adopting the Special Master's recommended findings and conclusions. Scott appeals.

## Discussion

1. Did the District Court abuse its discretion when it awarded sole custody to Catherine?

The standard of review for a district court's award of child custody is whether the court's findings are clearly erroneous. In re Marriage of Dreesbach (1994), 265 Mont. 216, 220, 875 P.2d 1018, 1021. The findings of fact must be based on substantial credible evidence, and the court's decision will be upheld unless a clear abuse of discretion is shown. Dreesbach, 875 P.2d at 1021.

Scott argues that the court erred when it failed to grant him joint custody. He cites In re Marriage of Mitchell (1991), 248 Mont. 105, 809 P.2d 582, and Wilson v. Wilson (1979), 180 Mont. 377, 590 P.2d 1136. In Mitchell, we determined that a parent's use of profanity and drunkenness in the presence of children are factors for a court to consider under § 40-4-212, MCA. Mitchell, 809 P.2d at 585. In Wilson, this Court concluded that a court could not ignore a parent's activities that occur at home as evidence of that parent's unfitness. Wilson, 590 P.2d at 1139.

4

Scott claims that the court failed to consider the "chaos" in the year preceding the hearing and did not properly weigh Catherine's abuse of alcohol. He points out that Catherine lived with a parole violator who assaulted her, destroyed her home, and exposed himself to her children. He notes that Summer and Aurora ran away from home while in Catherine's custody.

A district court shall award custody according to the factors set forth in § 40-4-212, MCA. In re Marriage of Hogstad (1996), 275 Mont. 489, 495, 914 P.2d 584, 588. From the evidence presented at the hearing, it is clear that both Catherine and Scott wanted custody of their children. Catherine wanted sole custody and Scott wanted joint custody. However, Scott admitted that he would be unable to work with Catherine to make joint parenting decisions.

The children expressed varying preferences concerning custody and visitation. Aurora wants no visitation with her father. Summer would like the opportunity to visit Scott, unsupervised, when she wishes. Darius and Elias expressed no preference.

The Special Master heard evidence that the children's relationship with Catherine was healthier than their relationship with Scott. Catherine testified to several incidents of Scott's inappropriate behavior in front of the children. Scott told Elias that Catherine had AIDS and was going to die. He informed Summer that he was not a virgin anymore. He attempted forced sexual intercourse with Catherine in the presence of Darius and Elias. He opened a car door while traveling on the highway and threatened to jump.

5

The Special Master heard evidence that Scott had exhibited various incidents of violence. He destroyed Catherine's furniture, television, and punched her wall. He threw coffee on her and attempted to stuff panties in her mouth. Scott smoked marijuana in front of the children. When asked if he had cooperated with law enforcement when Summer and Aurora got into trouble, he stated, "Authorities haven't cooperated with me. . . ." The guardian ad litem expressed concern that Scott's borderline personality disorder would negatively affect his ability to parent.

The record reflects that the Special Master and the District Court considered the allegations raised by Scott and weighed the factors set forth in § 40-4-212, MCA, when they determined custody. We conclude that the District Court's findings relating to custody are based on substantial credible evidence and are not clearly erroneous. We hold that the District Court did not abuse its discretion when it awarded sole custody to Catherine.

2. Did the District Court abuse its discretion when it required supervised visitation?

Our standard of review for visitation is whether substantial credible evidence supports the district court's findings. Hogstad, 914 P.2d at 591. We will overturn a court's visitation decision only when the court's findings and conclusions clearly demonstrate an abuse of discretion. Hogstad, 914 P.2d at 591.

Scott cites § 40-4-217, MCA, which requires that for a court to restrict visitation, it must find that visitation would endanger seriously the physical, mental, moral, or emotional health of the

6

children. Scott argues that because the Special Master made no such finding, the court abused its discretion.

Scott also refers to the District Court's order, which states, "Any parent who would make such a statement [Catherine having AIDS] is clearly in need of supervised visitation." Scott suggests that the court failed to notice that he had supervised visitation for two months before the AIDS remark was made. He further suggests that his visitation is supervised because he is tall and speaks with an unusual voice intonation due to an old head injury.

The serious endangerment requirement of § 40-4-217, MCA, applies when a court "deprive[s] the noncustodial parent of all visitation rights." In re Marriage of Njos (1995), 270 Mont. 54, 58, 889 P.2d 1192, 1194. The District Court did not deprive Scott of all his visitation rights. It simply required that his visitation with Darius and Elias be supervised. Section 40-4-217, MCA, is inapplicable to this case.

The court made no reference to Scott's height or speech patterns when it ordered supervised visitation. The record supports supervised visitation because of the inappropriate remarks Scott has made--such as falsely informing Elias that Catherine has AIDS. The fact that Scott made this remark after having supervised visitation further demonstrates that his visitation with Darius and Elias should remain supervised.

We conclude that there is substantial credible evidence to support the District Court's decision to require supervised

visitation. The District Court did not abuse its discretion when it required supervised visitation.

3. Were Scott's equal protection rights violated because he was financially unable to hire an expert to testify on child custody and visitation?

Scott claims that because he was unable to afford a forensic psychological evaluation to present at the hearing, that his right to equal protection, guaranteed by Article II, Section 4 of the Montana Constitution, was denied. An appellant carries the burden of establishing error by the trial court. Moreover, Rule 23, M.R.App.P., requires the appellant to cite to authority which supports his position being advanced on appeal. Scott has failed to support his equal protection argument with a single citation to case law. We decline to address Scott's equal protection argument.

The District Court's opinion, order and decree is affirmed.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices

8