No. 80-389

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

---

IN RE THE MARRIAGE OF

SABRE CAMILLE JENSEN,

Petition and Appellant,

and

GARY DOUGLAS JENSEN,

Respondent.

---

Appeal from: District Court of the Fourth Judicial District,
In and for the County of Ravalli.
Honorable James B. Wheelis, Judge presiding.

Counsel of Record:

For Appellant:

McCabe and Weingartner, Helena, Montana

For Respondent:

Milodragovich, Dale and Dye, Missoula, Montana

---

Submitted on briefs: May 15, 1981

Decided: July 17, 1981

Filed: JUL 17 1981

*Thomas J. Kearney*

Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Petitioner Sabre Camille Jensen appeals from the judgment of the Fourth Judicial District Court, Ravalli County, that dissolved her marriage to respondent Gary Douglas Jensen and provided for a division of marital assets and child support for the parties' minor children. She presents the following issues for our review:

1. Whether the court erred in its division of the parties' marital estate.

2. Whether the court exceeded its jurisdiction by apportioning the parties' ranch property water rights.

3. Whether the court erred in its child support order.

4. Whether the court erred in adopting verbatim the proposed findings of fact, conclusions of law and decree of dissolution proffered by Gary Jensen's counsel.

We have reviewed the record and argument of counsel and find no reversible error. We affirm the judgment of the District Court.

Gary and Sabre Jensen were married in 1959. Four children were born to them: Douglas, in 1959, Eric, in 1961, Melinda, in 1963, and Jennifer, in 1967. At the time the Jensens entered into their marriage, they owned little personal property. Through the years, however, with a combination of their own efforts and estate planning gifts from Gary's parents, the Jensens acquired approximately 255 acres of ranch land near Stevensville, Montana. The Jensens lived on this ranch and until 1976, Gary supported the family by maintaining a hay/cattle operation on his place and by working as a ranch hand on his parents' place. Sabre worked as a rancher's wife, managing the household affairs, caring for the children and working on the ranch when needed.

In 1976, Gary was seriously injured in a motorcycle accident, resulting in permanent partial paralysis. This accident ended Gary's ability to effectively work on his own and his parents' ranches. Gary was classified as totally and permanently disabled by the Social Security Administration. Since the time of the accident, Gary Jensen has received a social security disability payment of $229 monthly. The Jensen children, Melinda and Jennifer receive social security benefits of $50.40 monthly. In order to supplement the family income after the accident, Sabre Jensen went to work as a dental receptionist and grocery clerk, earning approximately $650 monthly.

In 1978, Gary and Sabre separated and the dissolution of marriage was initiated. They were unable to informally agree on a fair property division and the amount of child support that Gary should pay to Sabre as custodial parent. Two hearings were held in which the District Court received conflicting evidence of the ranch's value and Gary's ability to care for himself and earn a living. Following the hearings, the court asked counsel for both parties to submit proposed findings of fact, conclusions of law and supporting briefs to the court, regarding an equitable division of property and order for child support. The court received proposed findings and conclusions from counsel and adopted the findings of fact, conclusions of law and decree submitted by Gary's counsel. These findings and conclusions provided that the 255 acre ranch was worth $244,600. Gary would receive approximately 149 acres of the ranch, including most of the prime irrigable land and hay barns, while Sabre would receive approximately 106 acres, including the house and well. The water rights to the land were divided and easements were provided to allow access to the divided parcels. Sabre was awarded the family car, home furnishings and common stock

valued at approximately $30,000. Gary was awarded farm equipment, the registered livestock brand and his personal possessions. The decree further provided that Gary contribute to Sabre a sum equal to the social security disability payments for the minor childrens' support.

I. PROPERTY DIVISION:

In her appeal, Sabre asserts the District Court erred by failing to properly determine the Jensens' net worth, by improperly dividing the ranch property and water rights and by taking into account the relationship between the Jensens' ranch operation and the adjoining ranch operated by Gary's parents. We disagree. The action taken by the court was well within its power and the wide discretion given to the district courts to resolve property divisions:

> "A District Court has far-reaching discretion
> in resolving property divisions, and its judgment
> will not be altered unless a clear abuse of dis-
> cretion is shown. (Citations omitted.) The test
> for reviewing the District Court's discretion
> is: Did the District Court in the exercise of its
> discretion act arbitrarily without employment of
> conscientious judgment, or exceed the bounds of
> reason in view of all the circumstances?" (Citations
> omitted.) In Re Marriage of Jacobson (1979), ___
> Mont. ___, 600 P.2d 1183, 36 St.Rep. 1773.

In this case, the court was amply presented with evidence of the current value of the parties' assets and properly included its determination of the property values in its findings, as required under In Re Marriage of Brown (1978), ____ Mont. ____, 587 P.2d 361, 35 St.Rep. 1733. Sabre complains the court erred by adopting the low ranch valuation testimony offered by her husband's land appraiser expert, instead of relying on the higher valuation offered in her own expert's testimony. This is not reversible error. The District Court, as the trier of fact, in this trial without a jury, has the discretion to give whatever weight it sees

-4-

fit to the testimony of land appraiser witnesses. Dickerson v. Dickerson (1980), ___ Mont. ____, 614 P.2d 521, 37 St.Rep. 1286. Unless the valuation is clearly erroneous, it shall not be reversed on appeal. Rule 52(a), M.R.Civ.P.

Sabre attacks the property division by labeling it inequitable. The division here is not so inequitable that it amounts to an abuse of discretion and reversible error. As we explained in Dickerson, supra:

> "Substantially inequitable property divisions were reversed by this Court in In Re Marriage of Berthiaume (1977), 173 Mont. 421, 567 P.2d 1388; and In Re Marriage of Brown, supra. In Brown, the District Court awarded the wife $25,000.00 for her interest in a $350,000.00 ranch, the major marital asset. In Berthiaume, the District Court found that the parties' marital property should be equally divided, but the court awarded the husband over $17,000.00 of the marital property and awarded the wife less than $1,000.00 of the property. In both cases, one spouse was awarded over 90 percent of the marital property. Both property decrees were held to be substantially inequitable and were reversed."

Although the District Court did not divide the parties' property equally, this property division is not substantially inequitable. The court did not reversibly err by awarding Gary the more valuable (irrigable) ranch land adjoining his parents' property. At the time of dissolution hearings, Gary was living with his parents and was cared for by them. He supported himself by working as a part-time ranch hand on the two ranches. This division, which takes into account Gary's disability, does not "exceed the bounds of reason in view of all the circumstances." Jacobson, supra.

Sabre further attacks the water rights property division contending the District Court lacked the power to divide the existing water rights. She argues that a water judge alone has the power to make this division. We do not agree. Although the water judges have exclusive jurisdiction over the determination and interpretation of existing water

rights, a district judge has original jurisdiction in dissolution of marriage proceedings and is required by statute to divide and distribute all marital property involved including any water rights. See, sections 3-7-501, 3-5-302, and 40-4-202, MCA. A water right is a kind of property. See, Brennan v. Jones (1936), 101 Mont. 550, 55 P.2d 697.

II. CHILD SUPPORT:

We find no reversible error in the District Court's child support award. Although we firmly believe it is the legal and moral duty of parents to support their children, our statutes place the burden of determining the proper amount of support upon the District Court. See, section 40-4-204, MCA; State ex rel. Lay v. District Court (1948), 122 Mont. 61, 198 P.2d 761. Absent a clear abuse of discretion resulting in substantial injustice, an award of child support made by that court will not be disturbed on appeal. Grenfell v. Grenfell (1979), ____ Mont. ____, 596 P.2d 205, 36 St.Rep. 1100; Brown, supra. Although the award here of $50.40 per child per month is extremely low, it is consistent with the ability of Gary as noncustodial parent, to pay for support. There is no abuse of the court's wide discretion.

III. USE OF PROPOSED FINDINGS BY THE COURT:

In her final specification of error, Sabre argues the District Court erred by adopting the proposed findings of fact, conclusions of law and decree submitted by Gary's counsel. She suggests that a lower standard for review should exist for the review of findings and conclusions drafted by counsel than exists under the "clearly erroneous" standard of Rule 52(a), M.R.Civ.P. We decline to adopt this suggestion. In Schilling v. Schwitzer-Cummins Co. (D.C. Cir. 1944), 142 F.2d 82, Justice Miller addressed this

precise suggestion and persuasively explained reasons for allowing courts to ask for counsel's assistance in drafting findings of fact and conclusions of law:

> "Whatever may be the most commendable method of preparing findings--whether by a judge alone, or with the assistance of his court reporter, his law clerk and his secretary, or from a draft submitted by counsel--may well depend upon the case, the judge, and facilities available to him. If inadequate findings result from improper reliance upon drafts prepared by counsel-- or from any other cause--it is the result and not the source that is objectionable. It is no more appropriate to tell a trial judge he must refrain from using or requiring the assistance of able counsel, in preparing his findings, than it would be to tell an appellate judge he must write his opinions without the aid of briefs and oral argument."

Our ultimate test for adequacy of findings of fact is whether they are sufficiently comprehensive and pertinent to the issues to provide a basis for decision, and whether they are supported by the evidence presented.

In Tomaskie v. Tomaskie (1981), ___ Mont. ___, 625 P.2d 536, 38 St.Rep. 416, we disapproved of wholesale adoption of proposed findings submitted by a party. Such a practice may lead to error. See, Beck v. Beck, Cause No. 81-286, Decided July 9, 1981 in this Court. Once findings are adopted however, Rule 52(a) applies to support them on appeal, and there is no reason in the Rules or otherwise to give such adopted findings a lesser degree of weight, since once signed by the district judge they bear the imprimatur of the court.

The findings of fact and conclusions of law entered here by the court are comprehensive and supported by the evidence. They contain no clear error.

The judgment of the District Court is affirmed.

John C. Sheehy
_____
Justice

-7-

We Concur:

_____

_____

_____

_____
Justices

Mr. Justice Daniel J. Shea concurring:

Although I agree to affirm the judgment, I nonetheless express my disapproval of the trial court's adoption verbatim of the proposed findings and conclusions submitted by counsel for the husband. Counsel for the wife, however, raises this issue for the first time on appeal, and therefore, in the context of her failure to raise this issue in the trial court after it originally adopted verbatim the proposed findings and conclusions, I would not reverse on this ground. However, absolutely no reason exists (other than judicial expediency, which is no reason at all) for this Court to tolerate the practice of a trial court simply rubber-stamping the proposed findings and conclusions submitted by counsel for the winning party.

Procedurally, after the trial ended and both sides had submitted their proposed findings and conclusions, the trial court adopted verbatim those proposed by the husband, and judgment was entered accordingly. The wife then moved the trial court to amend its findings and conclusions in certain particulars, but she did not complain then that the trial court had adopted verbatim those findings and conclusions proposed by the husband. The trial court failed to directly act on the wife's proposed amendments because the time went by without a decision and therefore, under Rule 59(d), the motion was deemed denied. It appears, however, that the wife's counsel did everything he could to get the trial court to act on the proposed amendments, but the trial court did not affirmatively act.

If the wife had raised the issue before the trial court and complained that it should not have adopted verbatim the husband's proposed findings and conclusions, this case would

-9-

be in a different procedural perspective on appeal, and I believe that basic judicial policy would dictate that the case be vacated and remanded so that the trial court could enter its own findings and conclusions. It may well be that the result would be no different, but this Court should not tolerate a decision-making process of the District Court which consists entirely of the wholesale adoption of the proposed findings and conclusions of the winning party.

I do not believe that anyone would or should tolerate a practice of this Court of reaching a decision in an appeal and then directing counsel for the winning party to prepare an opinion for the members of this Court to sign. Nor do I think anyone would or should tolerate the procedure of a trial court adopting verbatim the proposed findings and conclusions of the winning party. In both situations, the judicial process is demeaned.

In addition, I emphasize that Schilling v. Schwitzer-Cummins Co. (D.C. Cir. 1944), 142 F.2d 82, cited and quoted in the main opinion, must be considered in the context of what happened in that case. Several factors are pertinent. First, the trial court wrote a preliminary memorandum after the trial ended, holding for the defendant, stating the facts were essentially as contended by the defendant, and then directed counsel for defendant to prepare the findings and conclusions. Second, a reading of Schilling does not disclose that the trial court adopted verbatim the submitted findings and conclusions, although it may perhaps be inferred. Third, the plaintiff relied, to a large extent, on certain evidence to support its case, but in the memorandum, the trial court held he excluded this evidence from any consideration, and the appellate court upheld the trial court on this issue.

-10-

Needless to say, certain facts contended by the plaintiff

evaporate when supporting evidence is properly excluded.

Fourth, and most important, nowhere in the opinion did the

court approve of the wholesale adoption of proposed findings

and conclusions presented by the winning party.

The integrity of the judicial process cannot be upheld

if a trial court is free to adopt verbatim the findings and

conclusions presented by the winning party. In fact, Canon

19 of the Canons of Judicial Ethics, fairly construed, does

not permit such practice. The first paragraph of this Canon

states:

> "In disposing of controverted cases, a judge
> should indicate the reasons for his action
> in an opinion showing that he has not disregarded
> or overlooked serious arguments of counsel. He
> thus shows his full understanding of the case, avoids
> the suspicion of arbitrary conclusion, promotes
> confidence in his intellectual integrity and may
> contribute useful precedent to the growth of the
> law." 144 Mont. at xxii--xxxiii.

Canon 19 would be stripped of substance if this Court

held that it applies only to written decisions of a trial

court, but not to written findings and conclusions of a trial

court--both accomplish the same result--both decide the case.

Verbatim adoption of the proposed findings and conclusions of

the winning party cannot help but create a belief that the

trial court did not have a full understanding of the case and

that it reached an arbitrary conclusion. Certain it does not

promote confidence in the intellectual integrity of the trial

courts. I view the practice of verbatim parroting of proposed

findings and conclusions no differently than I would view an

opinion of this Court if it were written by counsel for the

winning party. The opinion may be factually supportable, and

it may be legally sound, but neither the losing party nor the

public would have any confidence in an appellate court if it

were to adopt such a practice. Nor should the losing party or the public have any confidence in a trial court that rubber-stamps the proposed findings and conclusions of the winning party.

## THE PURPOSE OF FINDINGS OF FACT

Findings of fact serve three purposes. First, they assist the trial court in the adjudication process in that careful fact-finding does or at least should prevent a trial court from "shooting from the hip." 1 San Diego Law Review 14. Also see, United States v. Forness (2nd Cir. 1942), 125 F.2d 928. Second, findings of fact "serve other courts where issues of estoppel by judgment or res judicata are involved. A later court looking at a judgment based on such findings must know precisely what was decided, and this cannot be determined by the judgment alone . . ." 1 San Diego Law Review 14. Third, the findings "inform the court of appeals of the basis of the judgment." 1 San Diego Law Review 14.

The question then becomes one of whether trial courts should be permitted, in fulfilling this three-fold purpose, to simply enter as their own, the proposed findings and conclusions proposed by the winning party. Respect for the judicial process demands that the answer be no.

## POLICY REASONS FOR REQUIRING THE TRIAL COURT TO DO ITS OWN FACT-FINDING AND CONCLUSION-MAKING

I emphasize first that this Court has expressly disapproved of the verbatim parroting of findings and conclusions of the winning party. Tomaskie v. Tomaskie (1981), ___ Mont. ___, 625 P.2d 536, 38 St.Rep. 416; Beck v. Beck (Decided July 9, 1981, Cause No. 81-286), cited in the main opinion. Tomaskie cited Canon 19 as one of the reasons why this practice is wrong.

Beyond Canon 19, and beyond what we said in Tomaskie, judicial policy dictates that the practice should be forbidden. In United States v. Forness (2nd Cir. 1942), 125 F.2d 928, cert.den. 316 U.S. 694, 62 S.Ct. 1293, 86 L.Ed. 1764, Judge Frank stated that this practice is an abdication of the great powers reposed in the trial courts. He stated:

"The correct finding, as near as may be, of the facts of the law suit is fully as important as the application of the correct legal rules to the facts as found. An impeccably 'right' legal rule applied to the 'wrong' facts yield, a decision which is as faulty as one which results from the application of the 'wrong' legal rule to the 'right' facts. The latter type of error, indeed, can be corrected on appeal but the former is not subject to such correction unless the appellant overcomes the heavy burden of showing that the findings of fact are 'clearly erroneous.' Chief Justice Hughes once remarked 'an unscrupulous administrator might be tempted to say 'let me find the facts for the people of my country, and I care little who lays down the general principles.'" That comment should be extended to include facts found without due care as well as unscrupulous fact-finding; for such lack of due care is less likely to reveal itself than lack of scruples, which, we trust, seldom exists. And Chief Justice Hughes' comment is just as applicable to the careless fact-finding of a judge as to that of an administrative officer. The judiciary properly holds administrative officers to high standards in the discharge of the fact-finding function. The judiciary should at least measure up to the same standard." 125 F.2d at 942.

Because of the great power residing in the office of a trial judge, the role of fact-finding is a heavy responsibility which must be engaged with the greatest of care. Judge Frank continued:

"The trial court is the most important agency of the judicial branch of government precisely because on it rests the responsibility of ascertaining the facts. When a federal trial judge sits without a jury, that responsibility is his. And it is not a light responsibility, since, unless his findings are 'clearly erroneous,' no upper court may disturb them. To ascertain the facts is not a mechanical act. It is a difficult art, not a science. It involves skill and judgment. As fact-finding is a human undertaking it can, of course, never be perfect and infallible. For that very reason, every effort should be made to render it as adequate as it humanly can be. (Footnotes omitted.)" 125 F.2d at 942-943.

The power of a state trial judge can be likened to the power of a federal trial judge insofar as their role as a fact-finder is concerned. What was said in Forness, supra, has equal application to the role of a state trial judge. If then, state trial judges are to have this vast power (and they surely have it), does it not make sense that the trial judge does the fact-finding and the conclusion-making, rather than counsel for the winning party?

If a trial court rubber-stamps the findings and conclusions presented by the winning party, I believe it to be an abuse of the judicial power. Although the judge signs his name to the findings and conclusions, it is indeed winning counsel who has disposed of the case in a manner that he thinks will be most advantageous to his client and least subject to successful attack on appeal. If it is for counsel to propose and the trial courts to dispose, it demeans the judicial process to have counsel for the winning party to do the fact-finding and conclusion-making.

In Ballantyne v. Anaconda Co. (1978), 175 Mont. 406, 574 P.2d 582, this Court, in holding that it is of utmost importance for the trial courts to set out the reasons for their decisions, quoted from West, The State Trial Judge's Book (1965). The policy behind setting out the reasons for a decision applies equally well to the policy of requiring the trial court to do its own fact-finding and conclusion-making. We stated:

> "When the time comes to prepare a written
> exposition of the basis for a decision, the
> judge has a heavy task on his hands. He feels
> the need to do his part well, in justice to the
> parties, to himself and to the position he
> occupies. The judge will write better opinions
> if he considers some of the important purposes
> they are intended to serve. A well-considered
> opinion can be of value to the judge himself,
> to counsel and the parties. It is invaluable
> to the appellate court, if the case goes up on
> appeal.

-14-

"The function of the opinion is to state the
reason which led the court to decide the case
the way it did.  Moreover, since in the process
of preparing an opinion the judge must discipline
his thinking, he is more apt to reach a just
decision in a complex case if he reduces his
reasoning to writing.

"Chief Justice Hughes once commented, 'The importance
of written opinions as a protection against judicial
carelessness is very great.'

"Opinions may be of great service to the litigants
and counsel in determining what their future course
should be.  The opinion may point the way to an
appeal, or it may eliminate one.  In either event,
the practical value to those most concerned is great.

"A well-stated opinion is of great assistance to
the appellate court as a chart of the reasoning
followed by the trial judge in reaching a decision.
Not everyone would agree with the cynical old judge
who is credited with saying, 'As far as the appellate
court is concerned, maybe they can think up a good
reason to support my judgment.  I don't want to give
them a bad one.'"  175 Mont. at 409.

The basic policy set out in the State Trial Judges Book
and quoted in Ballantyne, applies equally to findings of
fact and conclusions of law.  If the findings of fact and
conclusions of law are prepared entirely by counsel for the
winning party, of what value are they to the losing party,
to the public, or to an appellate court?  True, they decide
the case once the trial judge has signed his name to them.
But they state only how counsel for the winning party reasoned,
and what counsel thought about the case, and not what the
trial court thought about the case.  Is it fair to assume,
then, that counsel for the winning party did his thinking for
the trial court?  I believe it is, simply because there would
be no indication from the record that the trial court independently
examined the evidence and the law, and then arrived at its
own findings and conclusions.

FINDINGS AND CONCLUSIONS UNDER RULE 52(a)

By Rule 52(a), M.R.Civ.P., the duty to make findings
and conclusions in judge-tried cases, is clearly imposed on
the trial court.  The rule states:

-15-

"In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon, and judgment shall be entered pursuant to Rule 58; and in granting or refusing interlocutory injunctions the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action. Requests for findings are not necessary for purposes of review. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. The findings of a master, to the extent that the court adopts them, shall be considered as the findings of the court. If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein. Findings of fact and conclusions of law are unnecessary under Rules 12 or 56 or any other motion except as provided in Rule 41(b)." (Emphasis added.)

By Rule 52(a), it is the duty of the trial court to enter its findings and conclusions in judge-tried cases, and even if a party does not request the trial judge to make certain findings, judicial review is nonetheless available. Further, Rule 52(b), although it permits motions to request amendment of the findings or to make additional findings, does not require that this be done before a party has a right to challenge on appeal the sufficiency of the evidence to support the findings. It is clear, therefore, that the trial courts cannot foreclose one from challenging the sufficiency of the evidence to support the findings, even though the party has neither requested certain findings to be made nor moved to amend the findings or to make additional findings.

Rule 83, M.R.Civ.P., permits district courts to promulgate local practice rules in addition to the Rules of Civil Procedure as long as they are consistent with the Rules of Civil Procedure. It appears that many district courts, if not all, have promulgated local practice rules which call for counsel, at the conclusion of the case, to submit proposed findings and conclusions. Usually, each party is given so many days after the trial within which to present their

proposed findings and conclusions. I see nothing wrong
with these rules as long as they do not contain any sanctions
affecting the right of appeal. Rules 52(a) and (b), clearly
would prohibit any such sanctions. That is so because the
duty of fact-finding and conclusion-making is <u>unconditionally</u>
imposed on the trial court by Rule 52. The failure of counsel
to act cannot therefore, relieve the district courts of their
affirmative duty to act--that is to enter findings and
conclusions.

The language of Rule 52(a) "<u>the court shall</u> find the
facts specially and state separately its conclusions of law
thereon . . ." means exactly what it says. In, <u>Tomaskie</u>,
supra, this Court frowned on the practice of a trial court's
adopting verbatim the proposed findings and conclusions of
the winning party. All of the Federal Circuits have frowned
on this practice with the exception of the Ninth Circuit.
1 San Diego Law Review 14. In interpreting Federal Rule 52(a),
the Court in Roberts v. Ross (3rd Cir. 1965), 344 F.2d 747,
held that its purpose:

> ". . . is to require the trial judge to formulate
> and articulate his findings of fact and conclusions
> of law in the course of his consideration and
> determination of the case and as part of his
> decision making process, so that he himself may be
> satisfied that he has dealt fully and properly with
> all the issues in the case before he decides it and
> so that the parties involved may be fully informed
> as to the bases of the decision . . ." 344 F.2d
> at 751.

The court held that a trial court does not fulfill this
function when it adopts verbatim the proposed findings and
conclusions of the winning party.

In Merrill v. Merrill (Alaska 1962), 368 P.2d 546,
the Alaska Supreme Court held that under Rule 52(a), this
duty cannot be fulfilled if the trial court merely adopts the
proposed findings and conclusions of the winning party. The
trial judge himself must make the findings to assure:

-17-

". . . that he has exercised care in ascertaining the facts, and has employed both skill and judgment in reducing his thoughts on contested matters to precise and pertinent findings while the evidence is still fresh in his mind." 368 P.2d at 548.

The propriety of a trial court adopting verbatim the proposed findings and conclusions of the winning party, is annotated in 54 A.L.R.3d 868: Propriety and Effect of Trial Court's Adoption of Findings Prepared by Prevailing Party. This annotation covers only annotations of state courts. Needless to say, the decisions go in every direction, and for a variety of reasons. It is safe to say, however, that although many states have tolerated the practice, as a preferred practice, none have recommended it.

In those jurisdictions which disapprove of the practice, the annotation summarizes the reasons for disapproval:

"A number of cases, however, have registered disapproval of the practice of findings prepared by counsel for the prevailing party, both apart from any statute concerned with the making of findings, and under such statutes. Apart from complaints with regard to verbosity and improper content, often lineaments of counsel-drawn findings, the criticisms seems to have three bases: (1) preparation of findings [by the trial court] aids in the process of adjuication; (2) by the very nature of proper judicial function, the findings should be those of the trial judge, and (3) the applicable statute concerned with preparation of findings indicated that the duty thereof was that of the trial judge." 54 A.L.R.2d at 871.

As far as I am concerned, all three of these reasons (in addition to others I have mentioned) apply to a determination in this state that verbatim parroting of the prevailing party's proposed findings and conclusions, should not be permitted. Rule 52(a), supra, unequivocally imposes the duty on the trial judge to make findings and conclusions. Further, the judicial function is such that the findings should be those of the judge, and if not so, the judicial process has been demeaned. The process of adjudication is undeniably aided by the trial court's entering its own findings and conclusions.

-18-

## THE ROLE OF COUNSEL IN PREPARATION OF FINDINGS AND CONCLUSIONS

As I previously stated, counsel should have input if the trial court desires it, in proposing findings and conclusions, as long as those findings and conclusions proposed, are used as a guide of the views taken by opposing counsel. In Tomaskie, supra, we stated what we thought the role of counsel and the trial court to be in relation to findings and conclusions:

> ". . . It is wise practice for the trial court to prepare and file its own findings and conclusions. Only in that fashion can the parties know that the trial court has carefully considered all of the relevant facts and issues involved. This is not to say, however, that the trial court shouldn't have the guidance from lawyers on both sides. But guidance in an adversary system is always such that the findings and conclusions may not indicate a thorough treatment of the fact and law to be applied. But proposed findings and conclusions give the trial judge good insight as to just what factors the parties deem to be important. It is then up to the trial judge to translate his own judgment and conclusions into appropriate findings and conclusions.
>
> "It is becoming increasingly apparent to this Court, however, that the trial courts rely too heavily on the proposed findings and conclusions submitted by the winning party. That is wrong! See, Canon 19, Canons of Judicial Ethics, 144 Mont. at xxvi--xxvii."

Federal decisions, even though disapproving of verbatim parroting of the prevailing party's proposed findings and conclusions, have also recognized a vital role of counsel in submitting their suggested findings and conclusions to the trial court. But they have also recognized the fundamental and nondelegable duty of the trial court to do his own fact-finding and conclusion-making. See, for example, Roberts v. Ross, supra, 344 F.2d at 752-753; Louis Dreyfus & CIE v. Panama Canal Company (5th Cir. 1962), 298 F.2d 733, 737-739; and, Mesle v. Kea Steamship Corporation (3rd Cir. 1958), 260 F.2d 747, at 750.

In _Ross_, the Court spoke directly to the issue of the use of findings and conclusions presented by counsel:

> ". . . We did not then [In _Mesle_, supra] and we do not now, mean to suggest that a trial judge should not have the right to invite counsel for both parties to submit to him proposed findings of fact and conclusions of law, accompanied by briefs, if he desires them, to assist him in formulating his own findings and conclusions and reaching his decision. In the process of studying the facts and the law, findings and conclusions formulated and proposed by the parties may be most helpful to the judge in sharpening the issues and may serve a very useful purpose in aiding him in drafting his own findings and conclusions. . ."
> 344 F.2d at 752.

However, the Court also pointed out that even if the findings and conclusions prepared by counsel are sufficient, that the practice could trigger closer scrutiny of the evidentiary basis for the decision:

> ". . . But it should be remembered that findings and conclusions prepared by a party and adopted by the trial court without change are likely to be looked at by the appellate court more narrowly and given less weight on review than if they are the work produced of the judge himself or at least bear evidence that he has given them careful study and revision. For the latter procedure would assure the appellate court, as Judge Wisdom pointed out in Louis Dreyfus & CIE v. Panama Canal Company, 5th Cir. 1962, 298 F.2d 733, 738, 'that the trial judge did indeed consider all the factual questions thoroughly and would guarantee that each word in the finding is impartially chosen . . ." 344 F.2d at 752. (Emphasis added.)

A distinction should be made, furthermore, between many of the federal cases and the procedure which seems to be most prevalent in this state. Many of the federal decisions involve situations where the trial judge has announced his decision and has filed a memorandum setting forth his basic conclusions. He then directs counsel for the prevailing party to draft findings and conclusions in accordance with those views. Although I do not think this practice is good either, at least it shows that the federal court has reached the basic decisions of

-20-

who the prevailing party is and what the basis of the decision is. But even this practice fails to recognize the fundamental importance of fact-finding in the decision-making process, as opposed to first reaching a decision and then making those findings line up with the basic decision. In this state, for the most part, the practice is for the trial judge, at the conclusion of the case, to give such counsel time to present his proposed findings and conclusions before the decision is reached. Nor do I believe this is the preferable method of handling proposed findings and conclusions.

A SUGGESTED PROCEDURE FOR A MORE EFFECTIVE USE OF PROPOSED FINDINGS AND CONCLUSIONS: THEY SHOULD BE SUBMITTED BEFORE THE TRIAL BEGINS

Whether the trial courts conclude the trial and then give each party time to present proposed findings and conclusions, or whether they expect that proposed findings and conclusions should be presented to the court at the conclusion of the trial, each procedure fails to make the most effective use of the work of counsel in presenting proposed findings and conclusions. Rather, the trial court should require that counsel present proposed findings and conclusions before the trial begins. At the conclusion of the trial, if, for some reason counsel feels his findings and conclusions should be amended or supplemented, the trial court should give them time to do so. But the trial court should have the proposed findings and conclusions before the trial begins so that it can use them during the course of the trial.

My suggestion is not a novel one. Judge James M. Carter, then a United States District Judge for the Southern District of California, one of the authors of Findings of Fact, 1 San

Diego Law Review 13, suggested this procedure in 1964.
Undoubtedly many trial courts throughout the nation follow
this procedure. The procedure suggested is:

> "Various judges have suggested that a requirement
> that both sides submit their proposed findings of
> fact and conclusions of law before the trial starts
> would be helpful in the trial of a civil case,
> particularly a complicated one. If this practice
> is adopted, under each proposed finding counsel
> should set forth in supporting the proposed finding:
> a) the name of the witness, b) a summary of the
> proposed testimony of the witness, and c) the
> documents to be offered in support of the findings,
> attaching copies for the inspection of the court.

> "Such a practice would seem beneficial in a complex
> case in fulfilling the purpose of the findings as
> outlined above. F.R.Civ.P. Rule 52(a) suggests
> that the court find the facts and state its conclusions
> of law prior to entering judgment, which is certainly
> a logical approach. It would appears that if the
> proposed findings are submitted prior to the receipt
> of evidence, the court could more easily determine
> the factual issues while the evidence is quite fresh."
> (Emphasis added.)

These suggestions by Judge Carter are a far preferable
method of making the most effective use of proposed findings
and conclusions. In fact, while the trial is going on, the
trial judge may well use the proposed findings and conclusions
as a checklist against the evidence heard, and the trial judge
may well during the course of the trial, make preliminary
comments that will aid him in finding the facts and reaching
the ultimate decision. It would not then be a difficult task
to convert his own thoughts, his own determinations, into
meaningful findings of fact. The same procedure could be
used for the application of the law which opposing counsel
suggests could apply. The trial judge could at least be making
preliminary determinations, during the course of trial, as
to which law should apply, and how to apply it. The process
of tentative findings and conclusions, taking place during
the course of the trial, and always, of course, being subject
to change before the decision, should be of immense aid in
coming both to a speedy and just decision.

I also suggest the use of two more procedures that would aid in the decision-making process and aid this Court in appellate review. First, although the procedure is rarely invoked in judge-tried cases, the pretrial procedure provisions contained in Rule 16, M.R.Civ.P., should be used more often. In conjunction with invoking this procedure, there is no reason why the trial courts could not initiate a procedure directing that attorneys get together in an attorneys conference to see what they can do in terms of agreements so that they can present a more streamlined case to the trial court. Creative use of Rule 16, combined with the other power of the trial courts under Rule 83, can be utilized to greatly facilitate the decision-making process-- resulting both in faster decisions and in better decisions.

Second, I believe that the trial courts too frequently overlook the alternative to separately stating the findings and conclusions--that of writing a memorandum of decision incorporating the findings and conclusions in the memorandum. This is expressly permitted by Rule 52(b), M.R.Civ.P. Frequently, I find that a memorandum of decision, incorporating all the findings and conclusions in that memorandum serves as a better guide as to just how the trial court reached its decision. In addition, I believe that even if the trial courts separately state findings of fact and separately state their conclusions of law as provided for in Rule 52(a), a memorandum explaining the reasons for their decision is of great help to the parties and certainly to this Court. Often the findings and conclusions are so cold and barren, that they really give this Court no insight as to what the trial court really thought about the case.

I would hope that if the trial judges read Tomaskie, supra, they are now aware that this Court does not approve of the

verbatim adoption of the proposed findings and conclusions proposed by the prevailing party. If, however, the practice continues, I hope that this Court meets the issue head-on and either tells the trial courts they can do it or that they cannot do it. By this separate concurring opinion, my position is stated.

Daniel J. Shea
                                        Justice